UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

---

| | |
|---|---|
| MAVERICK FUND, LTD., MAVERICK USA, L.P., MAVERICK FUND II, LTD., MAVERICK LONG FUND, LTD., MAVERICK LONG ENHANCED FUND, LTD., and SPRUGOS INVESTMENTS IX, L.L.C., | Civil Action No. 4:21-cv-11-ELR |

Plaintiff,

vs.

MOHAWK INDUSTRIES, INC., JEFFREY S. LORBERBAUM, FRANK H. BOYKIN and BRIAN CARSON

Defendants.

---

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MOHAWK INDUSTRIES, INC. AND JEFFREY S. LORBERBAUM'S
MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND ................................................................2

III.  ARGUMENT .......................................................................................2

      A.    Plaintiffs' Section 18 Claims Are Timely .............................................2

      B.    Plaintiffs Plead Section 10(b) Claims and Properly Allege Loss Causation ...........................................................................13

      C.    Plaintiffs Plead Each Element of Their Section 18 Claims, Including Actual Reliance ..................................................................18

      D.    Plaintiffs Plead Section 20(a) Claims ..................................................20

      E.    Plaintiffs' Georgia Securities Act Claims Are Timely .......................20

      F.    Plaintiffs' Common Law Fraud, Negligent Misrepresentation, and Georgia Securities Act Claims Are Actionable; Plaintiffs Plead Loss Causation and Reliance.......................................................22

      G.    Plaintiffs Plead Georgia RICO and Conspiracy Claims ....................23

IV.  CONCLUSION ...................................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*100079 Canada, Inc. v. Stiefel Labs., Inc.*, 596 Fed. Appx. 744, 749 (11th Cir. 2014) ................................................................................4, 7

*Alexander v. Sonny's Real Pit Bar-B-Q*, 701 F. App'x 931, 936-937 (11th Cir. 2017) ................................................................................8

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ............. 11, 13, 22

*Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528 (M.D. Fla. 1989) ................................................................................13

*Bickerstaff v. SunTrust Bank*, 299 Ga. 459, 468-469 (2016) ...................................22

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, 2016 U.S. Dist. LEXIS 195190, *35-*39 (S.D. Fla. June 29, 2016) ......................................12

*CALPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) ............................... 9, 10

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 970-971 (E.D. Va. 2020) ................................................................................7

*City of Pontiac Gen. Employees Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011) ................................................................................4

*Curry v. TD Ameritrade, Inc.*, 2015 U.S. Dist. LEXIS 191684, at *50 (N.D. Ga. June 29, 2015) ....................................................................... 21, 22

*DeKalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 (2d Cir. 2016) ................................................................................3

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-343 (2005) ............. 10, 14, 15, 18

*Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 47 (D.D.C. 2006) ................................................................................16

*Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148 (2d Cir. 2012) ............................18

# TABLE OF AUTHORITIES

**Page**

*In re Equifax Inc. Sec. Litig*., 357 F. Supp. 3d 1189, 1248 (N.D. Ga. 2019) ........................................................................................14

*Lindley v. City of Birmingham*, 515 Fed. Appx. 813, 815 (11th Cir. 2013)..............2

*Lord Abbett Inv. Trustlord Abbett Short Duration Income Fund v. Valeant Pharms. Int'l*, 2018 U.S. Dist. LEXIS 129282, *25-*28 (D.N.J. July 31, 2018).....................................................................3

*Luczak v. Nat'l Bev. Corp.*, 812 Fed. Appx. 915, 920 (11th Cir. 2020) ........... 14, 16

*Maverick Fund v. Comverse Tech.*, 801 F. Supp. 2d 41, 55 (E.D.N.Y. 2011) ........................................................................................19

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ......................................... 3, 4, 7, 21

*MSP Recovery Claims v. Takeda Pharm. Am., Inc.*, 2021 U.S. Dist. LEXIS 187017, *17 (S.D.N.Y. Sept. 29, 2021) .............................................12

*MYL Litig. Recovery I LLC v. Mylan N.V.*, 2020 U.S. Dist. LEXIS 55501, *19-*21 (S.D.N.Y March 30, 2020)....................................................... 12, 13

*Newitt v. First Union Nat'l Bank*, 270 Ga. App. 538, 542 (2004)..........................21

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*, 2018 U.S. Dist. LEXIS 6134, *15 (D.N.J. Jan. 12, 2018)............................19

*Tello v. Dean Witter Reynolds, Inc*., 410 F.3d 1275 (11th Cir. 2005)......................8

*Theoharous v. Fong*, 256 F.3d 1219, 1228 (11th Cir. 2001)....................................8

*Twin Master Fund, Ltd. v. Akorn, Inc*., 2020 U.S. Dist. LEXIS 18727, *10 (N.D. Ill. Feb. 5, 2020) .............................................................3

*United States v. Blair*, 2021 U.S. Dist. LEXIS 23623, *14 (D. Md. Feb. 5, 2021) ........................................................................................24

*United States v. Robertson*, 493 F.3d 1322, 1331 (11th Cir. 2007) .......................24

# TABLE OF AUTHORITIES

**Page**

*Vernon v. Assurance Forensic Accounting, LLC*, 333 Ga. App. 377, 391 (2015)..............................................................................................23

*Walter v. Avellino*, 564 Fed. Appx. 464, 465 (11th Cir. 2014) ............................6, 8

*Williams v. Mohawk Indus.*, 465 F.3d 1277, 1288 (11th Cir. 2006) ......................25

## STATUTES

15 U.S.C. § 78r.............................................................................................................3

15 U.S.C. § 78r(c) .................................................................................................. 9, 11

28 U.S.C. § 1658(b) ............................................................................................... 3, 11

28 U.S.C. § 1658(b)(2)................................................................................................9

O.C.G.A. § 10-5-58(j)(1) ..........................................................................................21

O.C.G.A. § 10-5-58(j)(2) ..................................................................................... 20, 22

O.C.G.A. § 16-14-3(8) ...............................................................................................24

O.C.G.A. § 16-14-8.....................................................................................................23

Plaintiffs Maverick Fund, Ltd., Maverick USA, L.P., Maverick Fund II, Ltd., Maverick Long Fund, Ltd., Maverick Long Enhanced Fund, Ltd., and Sprugos Investments IX, L.L.C. ("Maverick" or "Plaintiffs") submit this memorandum in opposition to Defendants Mohawk Industries, Inc. ("Mohawk") and Jeffrey S. Lorberbaum's Motion to Dismiss this action (ECF No. 36) (the "Mohawk Mem.").

## I.    INTRODUCTION

Maverick purchased Mohawk common stock during the period from January 19, 2018 through the end of June 2018, at times when the prices of those shares were artificially inflated by Defendants' fraudulent scheme. ¶ 1.[1] Even though this Court has rejected Mohawk and Lorberbaum's motion to dismiss in the related federal securities class action *Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc. and Jeffrey S. Lorberbaum*, No. 4:20-cv-00005-ELR (N.D. Ga.) (the "Class Action"), these same Defendants move for dismissal again. Defendants reargue what the Court has already decided, and manufacture issues for dispute by misrepresenting both the law and the well-pleaded allegations.

---

[1] References to "¶__" are to the Complaint for Violations of the Federal Securities Laws and State Law (ECF No. 1) (the "Complaint"). Unless otherwise noted, all emphasis is added and all internal quotations and citations omitted.

Defendants' arguments are based on bad law and bad reasoning, and their invitation for this Court to reconsider its ruling in the Class Action should be denied.

## II.    FACTUAL BACKGROUND

Maverick's Complaint is based on its counsel's independent investigation, including interviews of numerous former Mohawk employees. *See* ¶¶ 33-45. Maverick's allegations are similar to those in the Class Action. Indeed, Defendants claim Plaintiffs are "members of a putative class action that have filed an individual action alleging ***nearly identical*** facts, theories, and federal claims as the Related Class Action." ECF No. 23 at 1. Accordingly, Plaintiffs will not bother repeating the factual allegations the Court knows well, as evidenced by the Court's Order denying Defendants' motion to dismiss the Class Action Consolidated Complaint. *See* Class Action ECF No. 60 (the "Class MTD Order").

## III.    ARGUMENT

### A.    Plaintiffs' Section 18 Claims Are Timely

"[D]ismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint. . . . [A]t the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Lindley v. City of Birmingham*, 515 Fed. Appx. 813, 815 (11th Cir. 2013).

- 2 -

Section 18 states: "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." 15 U.S.C. § 78r. ***These deadlines were extended to two years and five years by passage of The Sarbanes-Oxley Act***, 28 U.S.C. § 1658(b). *See DeKalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 407 (2d Cir. 2016) ("Section 18(a) is governed by § 1658(b)"); *Twin Master Fund, Ltd. v. Akorn, Inc.*, 2020 U.S. Dist. LEXIS 18727, *10 (N.D. Ill. Feb. 5, 2020) ("the two-year limitations period applies to the plaintiffs' section 18 claims"); *Lord Abbett Inv. Trustlord Abbett Short Duration Income Fund v. Valeant Pharms. Int'l*, 2018 U.S. Dist. LEXIS 129282, *25-*28 (D.N.J. July 31, 2018) (same).

In *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ("*Merck*"), the Supreme Court held "the limitations period [ ] begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation. . . ." *Id.* at 653. The Supreme Court was careful to expressly note that the limitations period does ***not*** begin to run just because the plaintiff was put on notice:

> In determining the time at which "discovery" of those "facts" occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. But the

limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have ***discovered "the facts constituting the violation," including scienter*** . . . .

*Id*. at 653. Even lawsuits and/or other public disclosures (such as an FDA warning letter) that alleged defendants "omitted, suppressed, or concealed material facts" would ***not*** result in "discovery" of "the facts constituting the violation" sufficient to begin the running of the statute of limitations. *Id*. at 653-654.

Under *Merck*, the statute of limitations does not begin to run until a prospective plaintiff has discovered sufficient facts not just to suspect fraud, ***but to be able to plead a claim that would survive a motion to dismiss*** under the stringent pleading requirements of the Private Securities Litigation Reform Act. *See 100079 Canada, Inc. v. Stiefel Labs., Inc.*, 596 Fed. Appx. 744, 749 (11th Cir. 2014) (when plaintiff "was in a position to ***adequately*** plead each element of a federal securities claim [ ] the statute of limitations began to run from that date."); *City of Pontiac Gen. Employees Ret. Sys. v. MBIA, Inc*., 637 F.3d 169, 175 (2d Cir. 2011) (statute of limitations begins to run when an investor discovers the "information and evidence a plaintiff would need ***to survive a motion to dismiss***").

In this case, the statute of limitations did not start to run until June 29, 2020, the filing of the Consolidated Complaint in the Class Action, when Lead Plaintiff

revealed publicly *for the first time* (i) that Mohawk orchestrated the Saturday Scheme to inflate sales, and (ii) Mohawk's hiding of unsaleable, defective "scrap" LVT in its ballooning inventories, which the Company carried at elevated prices in violation of Generally Accepted Accounting Principles ("GAAP"). ¶ 149. Prior to June 29, 2020, Mohawk disclosed poor earnings results and inventory problems, but neither Defendants nor the media nor the Company's employees revealed "the facts" sufficient to properly plead that Defendants had violated the securities laws. *See* ¶¶ 141-148. Notably, the Company did not disclose it was being investigated by the SEC and the DOJ until after Lead Plaintiff filed the Class Action Consolidated Complaint on June 29, 2020. ¶ 150.

The action is timely. Plaintiffs filed their Complaint on June 22, 2021 – less than one year after Lead Counsel filed the Class Action Consolidated Complaint on June 29, 2020.

As this Court acknowledged, the Consolidated Complaint in the Class Action "relies heavily on confidential witnesses (former employees of Mohawk [ ]) to show that Defendants' statements and omissions were false or misleading." Class MTD Order at 16. Prior to filing the Consolidated Complaint, the Lead Plaintiff, fulfilling its duties to the Class, conducted a thorough (and undoubtedly expensive)

investigation interviewing former Mohawk employees (among other things) to "discover" Mohawk's scheme. It would be absurd to expect that Maverick, prior to June 29, 2020, would have to conduct such an investigation to comply with the "reasonably diligent plaintiff" standard articulated in *Merck*. What's more, it is wild speculation to conclude that Maverick could have – or should have – "discovered" the facts underlying its claims before the Lead Plaintiff did so.

Defendants incorrectly argue the statute of limitations began to run on October 26, 2018, because Mohawk's stock price declined by double digits on that date after the Company reported earnings. Mohawk Mem. at 7. However, nothing in any disclosures on or around October 26, 2018, provided Plaintiffs with sufficient facts to plead a securities fraud case that could survive a motion to dismiss, which would thus start the statute of limitations. Publicly traded companies frequently suffer large stock price declines. As the Eleventh Circuit has made clear, a plaintiff learning "their investment had been lost" does not trigger the running of the statute of limitations. *Walter v. Avellino*, 564 Fed. Appx. 464, 465 (11th Cir. 2014) (reversing the District Court's grant of motion to dismiss on this basis).

Defendants also argue the statute of limitations began to run on January 3, 2020, when the initial "skinny" complaint was filed first naming Mohawk in a

putative securities class action. Mohawk Mem. at 8. This initial "skinny" complaint was devoid of the facts provided by the confidential witnesses alleged in the Consolidated Complaint, and itself did not adequately allege violations of the federal securities laws to survive a motion for dismissal. *See* Class MTD Order at 16 (recognizing Consolidated Complaint relied on former employees). Moreover, as the Supreme Court made clear, the mere filing of allegations in a complaint does not trigger the statute of limitations. *Merck* at 653-654. *See also Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 970-971 (E.D. Va. 2020) ("complaint's unproven, untested allegations" and "jury verdict contain[ing] minimal factual findings" insufficient to start statute of limitations period).

It is ironic, or at least inconsistent, that Defendants previously argued the Class Action Consolidated Complaint (filed on June 29, 2020) failed to plead sufficient facts to state a claim. *See* Class Action ECF No. 54. But now, to meet the *Merck* standard, Defendants contend Maverick knew all the facts they needed to state a claim and survive a motion for dismissal much earlier than the filing of the Class Action Consolidated Complaint. There is simply no basis for concluding Maverick was "in a position to adequately plead each element of a federal securities claim" prior to June 29, 2020. *100079 Canada, Inc.*, 596 Fed. Appx. at 749.

Defendants' cases are inapposite. In *Alexander v. Sonny's Real Pit Bar-B-Q*, 701 F. App'x 931, 936-937 (11th Cir. 2017) (Mohawk Mem. at 7), the court granted **summary judgment** in an employment case after the plaintiff admitted "[d]uring her deposition" to having **actual knowledge** of the defendant's violation prior to the pertinent statute of limitations. Here, no such admission is before the Court.

Defendants also rely upon – and urge this Court to follow – bad law when they cite *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005). Mohawk Mem. at 8-9. *Tello* has been overruled. *See Walter v. Avellino*, 564 Fed. Appx. 464, 466 (11th Cir. 2014) ("the Supreme Court specifically rejected the inquiry notice standard and in doing so **overruled** *Theoharous v. Fong*, 256 F.3d 1219, 1228 (11th Cir. 2001), and implicitly **overruled** *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1283 (11th Cir. 2005)").

Defendants' arguments are based on bad law and bad reasoning. Maverick's Section 18 claims are timely as Maverick commenced this action on June 22, 2021, well within the applicable two-year statute of limitations that began to run on June 29, 2020, when Lead Plaintiff filed its Consolidated Complaint revealing for the first time the details of Defendants' fraudulent scheme.

Defendants also argue the Section 18 three-year limitation period bars

Plaintiffs' claims. Mohawk Mem. at 9.[2] This argument also fails for several reasons.

***First***, the three-year limitations period governing Section 18 claims (15 U.S.C. § 78r(c)) was ***extended to five years by the passage of The Sarbanes-Oxley Act***, 28 U.S.C. § 1658(b)(2). *See supra* at pg. 3 (listing cases). Plaintiffs clearly brought this action well within the five-year limitation period.

    ***Second***, even assuming *arguendo* that the Sarbanes-Oxley Act, 28 U.S.C. § 1658(b)(2) does not apply, Plaintiffs filed this action well within the three-year limitations period set forth in 15 U.S.C. § 78r(c). Section 18 clearly states that a plaintiff's claims must be filed "within three years after such ***cause of action accrued***." 15 U.S.C. § 78r(c). A cause of action does not "accrue" until the prospective plaintiff suffers damages. Plaintiffs suffered no loss/damages, and their claims did not accrue, until Mohawk's stock price declined after a partial corrective disclosure on July 25, 2018. *See* ¶¶ 15, 131-139, 263-264. Plaintiffs brought this

---

[2] Defendants refer to the three-year limitations period of Section 18 (15 U.S.C. § 78r(c)), as a statute of repose. Mohawk Mem. at 9. It is not a statute of repose. *See CALPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (statutes of limitations begin to run "when the cause of action accrues," while statutes of repose begin to run on "the date of the last culpable act or omission of the defendant"). Section 18 claims must be filed "within three years after such ***cause of action accrued***." 15 U.S.C. § 78r(c).

action on June 22, 2021, well within three years of suffering a loss on July 25, 2018.

Defendants assert the Section 18 three-year limitation period runs from the date Plaintiffs purchased Mohawk shares – not the later date when Plaintiffs were injured by Mohawk's stock price decline. Mohawk Mem. at 9. Defendants ignore the plain language of the statute: the period runs only after the "cause of action *accrued*." As the Supreme Court made clear, an investor that purchases stock that has been fraudulently inflated is not damaged – "at the moment the transaction takes place, the plaintiff has suffered no loss" – and no cause of action has accrued until the later date when the stock price declines upon a revelation of the truth. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-343 (2005). In other words, "if no injury is occasioned by the lie, it is not actionable: ***but if it be attended with a damage, it then becomes the subject of an action***." *Id. See also CALPERS v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (where a "limitations period begins to run when the cause of action *accrues*" this is equivalent to "***when the plaintiff can file suit and obtain relief***"). Plaintiffs' Section 18 "cause of action accrued" only after Mohawk's stock price declined and Plaintiffs were injured on July 25, 2018.

Defendants' entire argument for running the limitations period from the date of purchase (not the date of injury) is based upon cases applying the statute of repose

governing Section 10(b). Mohawk Mem. at 9. This is a false equivalency. The Section 10(b) statute of repose does not contain the "accrued" language found in the Section 18 limitations period. Compare 28 U.S.C. § 1658(b) with 15 U.S.C. § 78r(c). Accordingly, Defendants' authorities are inapposite.

Finally, Plaintiffs' claims are timely for the separate and independent reason that the relevant statutes of limitations were tolled pursuant to both equitable tolling and the *American Pipe* tolling doctrine. Equitable tolling applies here because Plaintiffs' investigation of Defendants' fraud was inhibited by Defense counsel who intimidated witnesses and by the ongoing criminal investigation that caused witnesses to not speak with Plaintiffs' investigators. *See* ¶¶ 37-45. Moreover, *American Pipe* tolling stopped the applicable limitations periods from running at the time the Class Action was filed. In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

> [D]etermining whether plaintiffs can rely on a class action to toll their claims under the *American Pipe* doctrine involves a two-part inquiry. First, we must first determine whether plaintiffs [ ] were members of the underlying class. Second, if so, we then must determine whether the

> class action complaint would give defendants fair notice of the factual
> predicate for the claims that plaintiffs now assert . . . .

*MSP Recovery Claims v. Takeda Pharm. Am., Inc.*, 2021 U.S. Dist. LEXIS 187017,

*17 (S.D.N.Y. Sept. 29, 2021).

Plaintiffs meet both parts of the test: (i) Plaintiffs were Class members, and

(ii) the Class Action allegations put Defendants on "fair notice" of the factual

allegations that Maverick now pursues. Indeed, Defendants previously admitted to

both parts of the test when they informed the Court that the Maverick Plaintiffs

were "members of a putative class action that have filed an individual action

alleging **nearly identical facts, theories, and federal claims as the Related Class**

**Action**." ECF No. 23 at 1.

Plaintiffs' Section 18 claims were tolled even though the Class Action did

not allege Section 18 claims. *See MYL Litig. Recovery I LLC v. Mylan N.V.*, 2020

U.S. Dist. LEXIS 55501, *19-*21 (S.D.N.Y March 30, 2020) (class action alleging

Section 10(b) cause of action tolled individual investor's separate case alleging

Section 18 cause of action); *Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*,

2016 U.S. Dist. LEXIS 195190, *35-*39 (S.D. Fla. June 29, 2016) (same). As

numerous courts recognize, for "a plaintiff who wishes to take advantage of

*American Pipe* tolling, **the legal theory asserted is not the relevant metric**;" the

relevant question is whether "the suit raises claims that concern ***the same evidence, memories and witnesses as the subject matter of the original class suit***." *MYL Litig. Recovery I LLC*, 2020 U.S. Dist. LEXIS 55501, at *20. *See also Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528 (M.D. Fla. 1989) ("*American Pipe* tolling is properly extended where as here the individual claims involve the same 'evidence, memories, and witnesses' as are involved in the putative class action.").

### B.    Plaintiffs Plead Section 10(b) Claims and Properly Allege Loss Causation

Defendants assert Plaintiffs' Section 10(b) claims fail for one reason: Plaintiffs purportedly cannot establish loss causation as Maverick only held Mohawk shares over one of the three partial corrective disclosure dates alleged in the Class Action. Mohawk Mem. at 10-17. Defendants distort the Court's prior Order, the relevant law, and Plaintiffs' allegations.

In the Class Action, this Court held "Plaintiff has pled sufficient facts to support its allegations that corrective disclosures occurred on July 26, 2018, October 26, 2018, and July 26, 2019, and that Mohawk's stock price dropped after each announcement . . . . Accordingly, the Court finds Plaintiff has sufficiently pled loss causation . . . ." Class MTD Order at 56. Defendants acknowledge Plaintiffs in this action allege "***nearly identical*** facts, theories, and federal claims as the Related

Class Action." ECF No. 23 at 1. Nonetheless, Defendants now assert Plaintiffs fail to plead loss causation – repeating the same arguments this Court already rejected. *See* Mohawk Mem. at 10-17. There is no basis to disturb the Court's prior ruling.

Pleading loss causation is "not meant to impose a great burden," as Plaintiffs need only provide Defendants with "some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347. "The loss causation element is only subject to Rule 8's notice pleading standard, requiring a 'short and plain' statement, and not the heightened pleading standards of the PSLRA." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1248 (N.D. Ga. 2019). Plaintiffs establish loss causation by identifying a "corrective disclosure," which is merely a "release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud." *Luczak v. Nat'l Bev. Corp.*, 812 Fed. Appx. 915, 920 (11th Cir. 2020). "A corrective disclosure can be established by a single disclosure ***or a series of partial disclosures***." *Id*. at 921. A series of partial corrective disclosures ***must*** be viewed "cumulatively." *Id*. at 922.

Plaintiffs properly plead loss causation. Maverick pleads a series of partial corrective disclosures on various dates, each of which partially revealed Mohawk's true financial condition that Defendants had repeatedly lied about to investors, and

each of which preceded a substantial decline in Mohawk's stock price. *See* ¶¶ 127-140 (July 25/26, 2018 disclosure); ¶¶ 141-146 (Oct. 26, 2018 disclosure); ¶ 147 (Carson firing); ¶ 148 (July 25, 2019 disclosure); ¶¶ 149-150 (Class Action Consolidated Complaint and SEC/DOJ investigation); ¶ 151 (overall impact); ¶¶ 259-270. Defendants are simply wrong to assert Maverick alleges only one corrective disclosure. Mohawk Mem. at 17.

The Court found "corrective disclosures occurred on July 26, 2018, October 26, 2018, and July 26, 2019[.]" Class MTD Order at 56. Maverick purchased Mohawk shares in 2018 prior to the July 26, 2018 corrective disclosure, and held those shares over that loss causation date. *See* ¶ 265. Nothing in the Court's ruling, common sense, or case law would require Maverick – ***or any member of the Class*** – to have held shares over ***all*** of the partial corrective disclosure dates to plead loss causation. The Supreme Court recognized that, in cases involving a series of partial disclosures, the plaintiff did not need to hold over each corrective disclosure to establish loss causation. Rather, a plaintiff need only hold its shares until a stock price decline after "the relevant truth ***begins to leak out***." *Dura*, 544 U.S. at 342. This is what Maverick did. Plaintiffs sold their shares after the first corrective

disclosure (in a series of partial corrective disclosures) that caused Mohawk's stock to collapse 18% in one day. ¶¶ 26, 140, 265.

The Eleventh Circuit recently rejected the same argument Defendants make here. The Eleventh Circuit reversed a dismissal because "the district court failed to analyze [the plaintiff's] complaint as alleging a series of partial disclosures" that "cumulatively disclosed" the "undisclosed truth" that the defendants had previously misrepresented. *Luczak*, 812 Fed. Appx. at 922.

To adopt Defendants' argument would render the securities laws toothless. *See*, *e.g.*, *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 47 (D.D.C. 2006) ("to require proof of a complete, corrective disclosure would allow wrongdoers to immunize themselves with a protracted series of partial disclosures"). Accordingly, there is neither a policy nor a legal basis for the Court to reverse its sound ruling on loss causation in the Class MTD Order.

Finally, even assuming *arguendo* the July 25/26, 2018 loss causation date must stand on its own apart from the other corrective disclosure dates, Plaintiffs sufficiently plead loss causation. As Plaintiffs allege, Defendants' scheme of pulling in sales, selling defective LVT to unsuspecting customers, and refusing to write-down defective inventory was not sustainable; in every quarter in 2017 and

the first quarter of 2018, Mohawk dug itself a deeper hole. ¶¶127-129. Customers would not continue to purchase defective LVT from Mohawk. Only so much defective LVT and carpet could be hidden in inventory. And, pulling future sales into earlier quarters makes it more difficult to make future sales targets because the true demand for the product does not really exist (as if the sales were real). ¶128. This all came to a head in the second quarter of 2018, when the gap to meet targets got too large to overcome, even with cheating. Mohawk had to reveal that its North American unit (the unit run by Carson where the fraud took place) had failed to make its expected financial results and that the Company had massive levels of excess inventory, causing Mohawk's stock to crater. ¶¶130-139.

The linkage between the fraudulent scheme and the stock price decline is not only obvious on its face, but it is supported by Mohawk former employees. For example, CW9, a Senior Manager of Distribution Operations, explained that Mohawk conducted its Saturday Scheme quarter-end practice in every quarter of 2017 and 2018 prior to the second quarter of 2018. ¶ 118. The goal of the Saturday Scheme was to juice Mohawk's revenues for the quarter. *Id*. But, according to CW9, Mohawk did not dump inventory on customers in the second quarter of 2018, because Mohawk was just too far away from making its financial targets. ¶ 119.

Thus, even assuming *arguendo* that each corrective disclosure must be analyzed separately (which is not the law), Plaintiffs' well-pleaded facts establish a sufficient link between the Defendants' fraudulent scheme and the stock price decline on July 25/26, 2018, such that Defendants proximately caused Plaintiffs' losses. Plaintiffs more than provide Defendants with "some indication of the loss and the causal connection that the plaintiff has in mind." *Dura*, 544 U.S. at 347. As Plaintiffs plead loss causation, and Defendants do not otherwise challenge Plaintiffs' Section 10(b) claims, the motion should be denied.

## C.    Plaintiffs Plead Each Element of Their Section 18 Claims, Including Actual Reliance

Other than timeliness and loss causation, Defendants mount only one additional challenge to Plaintiffs' Section 18 claims – reliance. Plaintiffs plead reliance. *See* ¶¶ 25, 152-161, 162-165. In *Gould v. Winstar Commc'ns, Inc*., 692 F.3d 148 (2d Cir. 2012), the Second Circuit allowed a Section 18 claim to survive summary judgment where the plaintiff could not even recall whether she read the false statement at issue, but merely testified it was her "practice" to review such documents. *Id.* at 161. If that was enough to get by summary judgment, Plaintiffs have certainly alleged sufficient facts concerning their reliance to survive a Rule

12(b)(6) motion – as Maverick had a "pattern and practice of always reading and reviewing available SEC filings . . . prior to making investments." ¶ 156.

Further, Defendants falsely assert that Maverick only generically references having "relied on Mohawk's SEC filings" and that Maverick did not "identify specific statements" within such documents that it relied upon. Mohawk Mem. at 19. That is not true. Plaintiffs specifically allege having "read, or listened to, and relied on Defendants' materially false and misleading **statements alleged herein** prior to purchasing Mohawk shares." ¶ 154. *See also* ¶ 162. Plaintiffs plead having read and/or listened to **the specific statements** (not just documents) **identified in the Complaint**. This is more than sufficient. *See Maverick Fund v. Converse Tech.*, 801 F. Supp. 2d 41, 55 (E.D.N.Y. 2011) ("Maverick alleges that it read and/or listened to and relied upon the defendants' false and misleading statements before investing tens of millions of dollars . . . . This **alone** is a sufficient allegation of actual reliance for purposes of surviving a motion to dismiss."). *See also T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*, 2018 U.S. Dist. LEXIS 6134, *15 (D.N.J. Jan. 12, 2018) (Section 18 claim properly pleaded where "Plaintiffs have identified the statements on which they relied, in specific

documents filed with the SEC, and pled actual eyeball reliance on these documents and statements in purchasing the securities at issue.").

### D.    Plaintiffs Plead Section 20(a) Claims

Defendants do not assert an independent challenge to Plaintiffs' Section 20(a) control person claims. *See* Mohawk Mem. at 19 (merely challenging the existence of a primary violation). As Plaintiffs have adequately pleaded primary violations of both Sections 10(b) and 18 of the Exchange Act, as demonstrated above, the control person claims are properly pleaded. *See also* ¶¶ 337-341.

### E.    Plaintiffs' Georgia Securities Act Claims Are Timely

Defendants concede (Mohawk Mem. at 20), the proper statute of limitations for Plaintiffs' Georgia Securities Act ("GSA") claims is found at O.C.G.A. § 10-5-58(j)(2): "A person may not obtain relief under subsection (b) of this Code section . . . unless the action is instituted within the earlier of two years after discovery of the facts constituting the violation or five years after the violation occurred." The applicable GSA statute of limitations mirrors the statute of limitations for Plaintiffs' Section 18 claims, as extended by The Sarbanes-Oxley Act; accordingly, Plaintiffs' GSA claims are timely for the same reasons articulated in § III.A.

Defendants misrepresent the holding of *Newitt v. First Union Nat'l Bank*, 270 Ga. App. 538, 542 (2004), to assert the limitations period ***under Georgia law*** began to run on October 26, 2018. *See* Mohawk Mem. at 20-21. *Newitt* did ***not*** articulate Georgia law with regards to the GSA statute of limitations. The *Newitt* limitations holding concerned federal (not Georgia) law. *See Newitt*, 270 Ga. App. at 542 (addressing whether the "trial court erred in finding [the plaintiffs'] ***federal securities law claims*** barred by the statute of limitations"). Moreover, *Newitt* predates *Merck*, in which the Supreme Court expressly overturned the exact language Defendants quote. *See* § III.A. The statute of limitations does ***not*** begin to run when a reasonable person would begin investigating. *Id*. The standard articulated in *Newitt* is no longer good law and does not support dismissal.

Defendants' reliance on *Curry v. TD Ameritrade, Inc*., 2015 U.S. Dist. LEXIS 191684, at *50 (N.D. Ga. June 29, 2015) is likewise misplaced. *See* Mohawk Mem. at 21. In *Curry*, the court dismissed claims that "involve[d] the sale of unregistered securities" because the action was not "instituted within two years after the violation occurred." *Id*. at *46-*50. The *Curry* plaintiffs' allegations were subject to the two-year statute of repose articulated in O.C.G.A. § 10-5-58(j)(1). Maverick's GSA claims are not subject to O.C.G.A. § 10-5-58(j)(1), but are

governed by the statute of limitations articulated in O.C.G.A. § 10-5-58(j)(2). Defendants concede this. *See* Mohawk Mem. at 20. Moreover, in *Curry*, the plaintiffs' claims subject to O.C.G.A. § 10-5-58(j)(2), were not dismissed as untimely. *See Curry*, 2015 U.S. Dist. LEXIS 191684, at *55-*64. Defendants' own case *Curry* counsels for denial of the motion to dismiss.

Plaintiffs filed this action well within the two and five-year limitations periods pertinent to Plaintiffs' GSA claims, which are timely for the same reasons articulated in § III.A., *supra*. Further, Georgia follows *American Pipe* tolling. *See Bickerstaff v. SunTrust Bank*, 299 Ga. 459, 468-469 (2016) (endorsing and "applying the reasoning of the Supreme Court in *American Pipe* and subsequent decisions of this and other courts"). Thus, Plaintiffs' GSA claims were also tolled by the Class Action as detailed in § III.A., *supra*.

F.    **Plaintiffs' Common Law Fraud, Negligent Misrepresentation, and Georgia Securities Act Claims Are Actionable; Plaintiffs Plead Loss Causation and Reliance**

Defendants incorrectly argue that Plaintiffs' common law fraud, negligent misrepresentation, and GSA claims should be dismissed because Plaintiffs do not plead loss causation and/or reliance. Mohawk Mem. at 21 (citing prior arguments). As Defendants make ***no*** new arguments with regards to these causes of action, and

Defendants' prior reliance and loss causation arguments provide no basis for such a finding, the Court should deny dismissal of these causes of action.

### G.    Plaintiffs Plead Georgia RICO and Conspiracy Claims

Under Georgia RICO, Defendants must have "engaged in at least two predicate acts of racketeering activity" that injured Maverick. *Vernon v. Assurance Forensic Accounting, LLC*, 333 Ga. App. 377, 391 (2015). The Complaint satisfies this standard and pleads actionable RICO claims against Defendants.

Defendants argue Plaintiffs fail to assert RICO predicate offenses. Mohawk Mem. at 22-24. That is not true. As Defendants concede, violations of the GSA suffice to establish predicate acts under Georgia RICO. Plaintiffs sufficiently plead violations of the GSA. *See* § III.F., *supra. See also* ¶¶ 385-386. Further, violations of the GSA would suffice as RICO predicate acts even if the GSA limitations period had run, as the RICO statute provides its own five-year limitations period. *See* O.C.G.A. § 16-14-8. Plaintiffs' RICO claims are indisputably timely.

Plaintiffs also plead predicate acts of wire and mail fraud. ¶¶ 379-383. Defendants argue Maverick "fails to plead a 'scheme to defraud' for the same reasons that [Maverick] fails to allege a 10(b) claim." Mohawk Mem. at 23. This argument fails, as Plaintiffs properly plead a Section 10(b) claim. *See* § III.B.

Defendants also contend Maverick does not properly plead any "use of the wires" to support a claim for wire fraud as predicate acts. Mohawk Mem. at 23. That is nonsense. The false and misleading statements identified in the Complaint were disseminated via interstate wires. ¶ 382. Defendants made numerous misstatements in SEC filings, press releases, and on conference calls with investors and analysts. These filings, press releases, and telephone calls were made by wire. *See*, *e.g.*, *United States v. Blair*, 2021 U.S. Dist. LEXIS 23623, *14 (D. Md. Feb. 5, 2021) (sustaining indictment for wire fraud where allegations were that "in furtherance of … scheme, defendant made submissions by way of the internet … or engaged in telephone communications"); *United States v. Robertson*, 493 F.3d 1322, 1331 (11th Cir. 2007) ("proof of a routine practice of using the wires to accomplish a business end is sufficient to support a count of wire fraud").[3] Defendants argue that Plaintiffs fail to plead "a direct nexus" for the same reasons Plaintiffs purportedly fail to plead loss causation. Mohawk Mem. at 24 (referencing

---

[3] Defendants argue that there is no "theft" as predicate acts. Mohawk Mem. at 23. The Court need not reach this issue. A violation of Georgia RICO requires only two predicate acts. O.C.G.A. § 16-14-3(8), and the Complaint alleges that Defendants (i) violated the GSA multiple times, and (ii) engaged in multiple instances of mail and wire fraud.

Mohawk's loss causation argument). "In RICO cases there must be 'some direct relation' between the injury alleged and the injurious conduct in order to show *proximate cause*." *Williams v. Mohawk Indus.*, 465 F.3d 1277, 1288 (11th Cir. 2006). Plaintiffs here purchased Mohawk shares at prices artificially inflated by Defendants' fraudulent scheme and suffered actual investment losses when the Company's stock price declined after the fraudulent scheme could no longer be maintained. *See* § III.B., *supra*. Plaintiffs plead loss causation and proximate cause, as this Court has already found in the Class Action. *See* Class MTD Order at 56.

Finally, Defendants argue that the Complaint fails to plead a conspiracy. Mohawk Mem. at 24-25. But the Complaint alleges that each Defendant knowingly perpetrated acts in furtherance of a common scheme to deceive investors. These allegations are sufficient to permit a reasonable inference that the Defendants conspired to commit the predicate acts alleged in the Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

Respectfully submitted this 28th day of January, 2022.

/s/Karen E. Bain
Karen E. Bain
Georgia Bar No. 495153

Henner & Scarbrough, LLP
2000 RiverEdge Parkway
Suite 550
Atlanta, GA  30328
Tel: (470) 531-3071
Fax: (470) 531-3063
Email: kbain@henscarlaw.com

DIETRICH SIBEN THORPE LLP
MATTHEW P. SIBEN (*pro hac vice*)
2292 Faraday Ave., Suite 100
Carlsbad, CA 92008
Telephone: (310) 300-8450
Facsimile: (310) 300-8401
matthew@dstlegal.com

– and –

DAVID A. THORPE (*pro hac vice*)
SHAWN M. HAYS (*pro hac vice*)
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Telephone: (310) 300-8450
Facsimile: (310) 300-8401
david@dstlegal.com


Attorneys for Plaintiffs Maverick
Fund, Ltd., Maverick USA, L.P.,
Maverick Fund II, Ltd., Maverick
Long Fund, Ltd., Maverick Long
Enhanced Fund, Ltd. and Sprugos
Investments IX, L.L.C.

## LOCAL RULE 7.1D CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

> */s/Karen E. Bain*
> Karen E. Bain
> Georgia Bar No. 495153
> Henner & Scarbrough, LLP
> 2000 RiverEdge Parkway
> Suite 550
> Atlanta, GA  30328
> Tel: (470) 531-3071
> Fax: (470) 531-3063
> Email: kbain@henscarlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on January 28, 2022, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of the filing to all counsel of record.

> */s/Karen E. Bain*
> Karen E. Bain
> Georgia Bar No. 495153
> Henner & Scarbrough, LLP
> 2000 RiverEdge Parkway
> Suite 550
> Atlanta, GA  30328
> Tel: (470) 531-3071
> Fax: (470) 531-3063
> Email: kbain@henscarlaw.com