UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| _____ x | | |
| MAVERICK FUND, LTD., | : | Civil Action No. |
| MAVERICK USA, L.P., MAVERICK | : | |
| FUND II, LTD., MAVERICK LONG | : | 4:21-cv-11-ELR |
| FUND, LTD., MAVERICK LONG | : | |
| ENHANCED FUND, LTD., and | : | |
| SPRUGOS INVESTMENTS IX, | : | |
| L.L.C., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MOHAWK INDUSTRIES, INC., | : | |
| JEFFREY S. LORBERBAUM, FRANK | : | |
| H. BOYKIN and BRIAN CARSON | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| _____ x | | |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT BRIAN CARSON'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................................................................................1

II.   FACTUAL BACKGROUND ...............................................................2

III.  ARGUMENT .......................................................................................3

     A.    Plaintiffs' Claims Are Timely ...................................................3

     B.    Plaintiffs State a Claim for Violation of Section 10(b) and Rule 10b-5 Promulgated Thereunder.............................................10

     C.    Plaintiffs State a Claim for Violation of Section 18 ...........................18

     D.    Plaintiffs Plead a Section 20(a) Claim ...............................21

     E.    Plaintiffs' State Law Claims Should Not Be Dismissed....................22

IV.   CONCLUSION ..................................................................................24

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*100079 Canada, Inc. v. Stiefel Labs., Inc.*, 596 Fed. Appx. 744, 749 (11th Cir. 2014)................................................................................................5

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ................. passim

*Appling v. Lamar, Archer & Cofrin, LLP (In re Appling)*, 848 F.3d 953, 959 (11th Cir. 2017) ......................................................................20

*Bickerstaff v. SunTrust Bank*, 299 Ga. 459, 468-469 (2016)....................................6

*Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, 2016 U.S. Dist. LEXIS 195190 (S.D. Fla. June 29, 2016)............................................ 8, 9, 10

*Cornett v. Ala. DOT*, 2018 U.S. Dist. LEXIS 152089, *9 (M.D. Ala. Sept. 5, 2018)...................................................................................9

*Cornett v. Ala. DOT*, 828 Fed. Appx. 565 (11th Cir. 2020)....................................9

*In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005) ..............................................................5

*Janus Capital Group, Inc. v. First Derivative Traders*, 564 U. S. 135 (2011)................................................................................... passim

*Lorenzo v. U.S. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1104 (2019)  11, 12, 15, 16

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ........................................................5

*Miller v. Dyadic Int'l*, 2009 U.S. Dist. LEXIS 151788, *35 (S.D. Fla. Sept. 29, 2009)................................................................................22

*Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008)....................21

*MSP Recovery Claims v. Takeda Pharms. Am., Inc.*, 2021 U.S. Dist. LEXIS 187017, *17 (S.D.N.Y. Sept. 29, 2021) ...............................................6

# TABLE OF AUTHORITIES

**Page**

*Plumber & Steamfitters Local 773 Pension Fund, Boston Ret. Sys. v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) .......................................12

*U.S. Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp.*, 2021 U.S. Dist. LEXIS 89518, *56 (S.D. Fl. May 11, 2021) ......................................... 17, 18

*U.S. Sec. & Exch. Comm'n v. Lottonet Operating Corp.*, 2017 U.S. Dist. LEXIS 51390, *32-*33 (S.D. Fla. March 31, 2017) ............................. 17, 18

*U.S. Sec. & Exch. Comm'n v. Monterosso*, 756 F.3d 1326 (11th Cir. 2014) ..................................................................................... 14, 20

*U.S. Sec. & Exch. Comm'n v. Sequential Brands Grp., Inc.*, 2021 U.S. Dist. LEXIS 188465, at *16 (S.D.N.Y. Sept. 30, 2021) ..............................15

*U.S. Sec. & Exch. Comm'n v. Strebinger*, 114 F. Supp. 3d 1321, 1331 (N.D. Ga. June 11, 2015) .............................................................15

*United States v. Guevara*, 894 F.3d 1301, 1308 (11th Cir. 2018) ..........................18

**STATUTES**

15 U. S. C. § 78j(b) ............................................................................10

15 U.S.C. § 78r....................................................................... 18, 19, 20

O.C.G.A. § 10-5-50...........................................................................23

**REGULATIONS**

17 CFR § 240.10b-5........................................................... 11, 12, 19, 23

iii

Plaintiffs Maverick Fund, Ltd., Maverick USA, L.P., Maverick Fund II, Ltd., Maverick Long Fund, Ltd., Maverick Long Enhanced Fund, Ltd., and Sprugos Investments IX, L.L.C. (hereafter referred to collectively as "Maverick" or "Plaintiffs") respectfully submit this memorandum in opposition to Defendant Brian Carson's Motion to Dismiss this action (ECF No. 38) ("Carson Mem.").

Defendant Carson relies upon and incorporates Defendants Mohawk Industries, Inc. ("Mohawk") and Jeffrey S. Lorberbaum's Motion to Dismiss this action (ECF No. 36) (referred to herein as the "Mohawk Memorandum"). *See* Carson Mem. at 1. Thus, Plaintiffs incorporate their Opposition to the Mohawk Memorandum (referred to herein as the "Main Opposition").

## I.    INTRODUCTION

Right out of the gate, Defendant Carson misleadingly asserts "this Court has not previously considered the viability of securities fraud claims against Mr. Carson" (Carson Memorandum at 1), but the truth of the matter is the Court did find, for pleading purposes, sufficient factual allegations to conclude Mr. Carson not only "***orchestrated***, knew of, and received information about ***the fraudulent schemes***" but that he also "***approved*** . . . the [false information in] financial reports of Mohawk's Flooring, N.A. division [ ] which was provided to investors" and that

Carson's conduct was sufficient to "support a strong inference of scienter as to Defendant Mohawk." *See* Class Action ECF No. 60 at 45-46 (referred to herein as the "Class MTD Order").[1] In a nutshell, that's securities fraud. Carson "orchestrated" the fraudulent scheme and "approved" false statements to investors. Defendant Carson's protestations to the contrary do not withstand scrutiny.

## II.    FACTUAL BACKGROUND

Plaintiffs will not bother repeating the factual allegations the Court knows well, as evidenced by the Court's Order denying Defendants' motion to dismiss the Class Action Consolidated Complaint. *See* Class MTD Order.

Plaintiffs do take this opportunity to address Defendant Carson's inaccurate contention that Plaintiffs allege "in wholly conclusory fashion" that Mr. Carson "orchestrated" the fraudulent scheme at issue here. Carson Mem. at 6. As the Court previously acknowledged, the well-pleaded allegations in the Class Action Consolidated Complaint demonstrate Carson "orchestrated" the fraudulent scheme

---

[1] Unless otherwise noted, all emphasis is added and all internal quotations and citations omitted. References to "¶__" are to the Complaint for Violations of the Federal Securities Laws and State Law (ECF No. 1). References to the "Class Action" are to *Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc. and Jeffrey S. Lorberbaum*, No. 4:20-cv-00005-ELR (N.D. Ga.).

at issue here. Class MTD Order at 45. Furthermore, Carson himself has previously acknowledged that the Maverick action alleges "nearly identical facts" as the Class Action Consolidated Complaint. *See* ECF No. 23 at 1 (stating the Maverick Plaintiffs "have filed an individual action alleging ***nearly identical facts, theories, and federal claims as the Related Class Action***."). Like the Class Action, Maverick's allegations that Carson "orchestrated" the fraud are not conclusory. Rather, the Complaint is based on Plaintiffs' Counsel's independent investigation, which included interviews of former Mohawk employees who, as percipient witnesses, provide a detailed account of the Defendants' fraudulent scheme, and Carson's role within it. *See* ¶¶ 33-45; 63-126. The Maverick Plaintiffs' allegations – though independently investigated and not merely copied from the Class Action Consolidated Complaint – are corroborated by the similarly detailed witness accounts in the Class Action. Carson's contention that the allegations are "conclusory" is simply without basis.

## III.   ARGUMENT

### A.   Plaintiffs' Claims Are Timely

Carson challenges the timeliness of Plaintiffs' federal securities and Georgia Securities Act ("GSA") claims, but not Plaintiffs' other causes of action. Carson

Mem. at 9-13. Carson argues that Plaintiffs knew or should have known all the facts necessary to file a securities fraud case against him no later than November 12, 2018, when Carson left his employment at Mohawk. To the contrary, Plaintiffs contend that they did not know (and a reasonable investor would not have discovered) the true facts of Defendants' fraudulent scheme, and Carson's fraudulent intent, until the Lead Plaintiff in the Class Action filed the Consolidated Complaint on June 29, 2020 – which relied heavily upon, and revealed for the first time, the first-hand accounts of former Mohawk employees who witnessed Defendants' fraudulent conduct. *See* Main Opposition at §§ III.A. and III.E.

Whereas Mohawk's Memorandum asserts the statute of limitations began to run on "October 26, 2018, at the latest, following multiple declines in Mohawk's stock price" (*id*. at 1), Defendant Carson asserts "Plaintiffs' federal securities claims . . . began to accrue no later than November 12, 2018" because on that date "***Mr. Carson's employment with Mohawk had ended.***" Carson Mem. at 11. That's it. Defendant Carson adds nothing further. Accordingly, Carson's motion fails for the same reasons Mohawk's motion fails. The additional fact that Mohawk terminated Carson – while providing some minimal support for finding a strong inference of

scienter on Carson's part – would hardly be sufficient to enable Plaintiffs to state a claim for fraud at that time.

The Parties agree this action is governed by *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ("*Merck*"), where the Supreme Court held "the limitations period [ ] begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation. . . ." *Id.* at 653. ***This includes sufficient facts to plead scienter***. *Id*. at 648-649.

The law is clear that the statute of limitations did not begin to run until Plaintiffs had adequate facts to plead a case for fraud that would survive dismissal. *See 100079 Canada, Inc. v. Stiefel Labs., Inc.*, 596 Fed. Appx. 744, 749 (11th Cir. 2014). The fact that Carson left Mohawk is hardly sufficient for Plaintiffs to plead a securities fraud and survive a motion for dismissal. As Mohawk previously argued, "***notable departures are not in and of themselves evidence of scienter given that most stock losses are often accompanied by management departures***." Class Action ECF No. 54 at 26, *quoting In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005).

Plaintiffs' claims are timely for the separate and independent reason that the relevant statutes of limitations were tolled pursuant to the *American Pipe* tolling

doctrine by the filing of the Class Action. In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

> [D]etermining whether plaintiffs can rely on a class action to toll their claims under the *American Pipe* doctrine involves a two-part inquiry. First, we must first determine whether plaintiffs [ ] were members of the underlying class. Second, if so, we then must determine whether the class action complaint would give defendants fair notice of the factual predicate for the claims that plaintiffs now assert . . . .

*MSP Recovery Claims v. Takeda Pharms. Am., Inc.*, 2021 U.S. Dist. LEXIS 187017, *17 (S.D.N.Y. Sept. 29, 2021).[2]

Plaintiffs meet both parts of the test: (i) Plaintiffs were Class members, and (ii) the Class Action allegations put Defendants (including Carson) on "fair notice" of the factual allegations that the Maverick Plaintiffs now pursue. Indeed,

---

[2] The Georgia Supreme Court has endorsed the federal standard for *American Pipe* tolling. *See Bickerstaff v. SunTrust Bank*, 299 Ga. 459, 468-469 (2016) (endorsing and "applying the reasoning of the Supreme Court in *American Pipe* and subsequent decisions of this and other courts"). Accordingly, the same analysis applies to Plaintiffs' GSA claims as to its federal securities claims.

Defendants (including Carson) previously admitted to both parts of the test when they informed the Court that the Maverick Plaintiffs were "members of a putative class action that have filed an individual action alleging *nearly identical facts, theories, and federal claims as the Related Class Action*." ECF No. 23 at 1.

The fact that Carson was not a named defendant in the Class Action is of no moment because he undoubtedly was made aware of the Class Action allegations, putting him on notice of the Class members' (including Plaintiffs') potential claims. The Mohawk Class Action, though it does not name Carson, alleges in detail that Carson "*orchestrated*, knew of, and received information about *the fraudulent schemes*" and that Carson also "*approved* . . . the [false information in] financial reports of Mohawk's Flooring, N.A. division [ ] which was provided to investors" and that Carson's conduct was sufficient to "support a strong inference of scienter as to Defendant Mohawk." *See* Class MTD Order at 45-46.

Moreover, Mohawk's legal counsel contacted former Mohawk employees to pressure and "intimidate" these percipient witnesses not to cooperate with any investigation of Mohawk. ¶¶ 37-38. Undoubtedly – given Mr. Carson's prominent role in the alleged fraud and his title as President of Flooring North America, the division in which the alleged fraud took place – Mohawk would likely have

contacted Mr. Carson about the Class Action allegations, as well as the ongoing government investigations. Accordingly, it seems implausible, if not downright absurd, to infer Defendant Carson was not put on notice of the Class Action factual allegations that are admittedly "identical" to the Maverick Plaintiffs' allegations.

In a footnote, Carson argues that *American Pipe* tolling does not apply because he "is not named as a defendant in the Class Action." Carson Mem. at 12, fn. 7. The court in *Broadway Gate Master Fund, Ltd. v. Ocwen Fin. Corp.*, 2016 U.S. Dist. LEXIS 195190 (S.D. Fla. June 29, 2016), addressed and rejected the very same argument that Defendant Carson makes now. *Id*. at *35-*39. In the *Broadway Gate* action, the plaintiffs were investors that opted out of a federal securities class action against Ocwen Financial Corporation, and filed an individual action alleging both (i) new causes of action not alleged in the class case, and (ii) ***naming new defendants not parties in the class case***. Despite this, the court agreed with the plaintiffs that *American Pipe* tolling would apply if the newly named defendants in the individual action had been put on notice of the possible claims against them. *See id*. at *37. The court held:

> The Court cannot say, at this stage, that the Section 18 claims against Britti and Bourque are time-barred because they are not defendants in [the] *Ocwen* [class action] and the *Ocwen* [class action] plaintiffs did not bring Section 18 claims. In light of the allegations regarding Britti

> and Bourque's status as high-ranking executives of [the company]
> Ocwen and the virtually identical alleged factual basis for the Section
> 10(b) claims in [the] *Ocwen* [class action] and the Section 18 claims in
> the instant action, and taking the allegations in the light most favorable
> to Plaintiffs, the Court infers that [the] *Ocwen* [class action] put Britti
> and Bourque ***on notice of the substance of the Section 18 claims now
> asserted against them***.

*Id*. at \*37-\*38. Accordingly, the fact that Carson was not a defendant in the Class

Action is not dispositive. Whether Carson received "notice of the substance" of

Plaintiffs' claims – which he did – is the proper test.

Carson relies (entirely) upon the holding of *Cornett v. Ala. DOT*, 828 Fed.

Appx. 565 (11th Cir. 2020) to assert that *American Pipe* tolling does not apply

because Carson was not a defendant in the Class Action. Carson Mem. at 12, fn. 7.

But, *Cornett* is inapposite. In that case, unlike the instant action, the ***plaintiff*** was

never a member of the class action he claimed tolled his individual case. *See*

*Cornett*, 828 F. App'x at 568 ("The class action [that plaintiff] refers to provides no

basis for equitable tolling, as it was filed against ADOT – an agency [plaintiff] never

alleged he worked for or applied to – and involved different discrimination

claims."). *See also Cornett v. Ala. DOT*, 2018 U.S. Dist. LEXIS 152089, \*9 (M.D.

Ala. Sept. 5, 2018) (no tolling from "class action against the Alabama Department

of Transportation" because plaintiff "does not have a claim against the Alabama

Department of Transportation because he never worked for that department"). Obviously, a class action involving a different class of plaintiffs, who were litigating wholly different claims, could not possibly establish *American Pipe* tolling for a plaintiff who was not in the class. But, that is not the case here.

In this case, Plaintiffs were members of the Class Action and the filing of the Class Action put Mr. Carson on notice of Plaintiffs' potential claims. Accordingly, *American Pipe* tolling applies from the date the Class Action was filed. *See Broadway Gate Master Fund, Ltd*., 2016 U.S. Dist. LEXIS 195190, at \*35-\*39. Given *American Pipe* tolling applies, Plaintiffs' claims are timely for this independent reason (in addition to being brought within the relevant statutes of limitations).

## B.    Plaintiffs State a Claim for Violation of Section 10(b) and Rule 10b-5 Promulgated Thereunder

Plaintiffs plead Carson violated the antifraud provisions of the federal securities laws found at § 10(b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder. Securities and Exchange Commission Rule 10b-5 makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact . . ., or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit . . .

in connection with the purchase or sale of any security.

17 CFR § 240.10b-5. Defendant Carson primarily focuses on liability under Rule 10b-5(b) for the making of an untrue statement. Carson ignores his liability under Rule 10b-5(a) and (c), often referred to as "scheme" liability, which is not limited in scope to those who "make" an untrue statement. Undoubtedly, Plaintiffs plead Carson participated – indeed orchestrated – a fraudulent scheme to deceive investors. Carson's conduct is not beyond the reach of the federal securities law as Carson contends. Any conclusion to the contrary would harm investors by allowing clearly fraudulent conduct to go unpunished, and therefore be encouraged. *See*, *e.g.*, *Lorenzo v. U.S. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1104 (2019) (reading Section 10(b) and Rule 10b-5 expansively because, in part, "Congress intended to root out all manner of fraud in the securities industry").

Carson argues he did not "make" the false and misleading statements at issue, and therefore cannot be liable under Rule 10b-5(b) pursuant to the holding in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U. S. 135 (2011). Carson Mem. at 14-20. However, "those who do not 'make' statements (as *Janus* defined 'make')

[ ] can be found to have violated the other parts of Rule 10b-5, subsections (a) and (c)." *Lorenzo*, 139 S. Ct. at 1099. Or, put another way, the Supreme Court "h[eld] that ***a person who has not 'made' a fraudulent misstatement can nevertheless be primarily liable for it***" not under Rule 10b-5(b), but under the other provisions of Rule 10b-5. *Id*. at 1106 (J. Thomas in dissent).

17 C.F.R. § 240.10b-5 has three provisions. Rule 10b-5(a) prohibits "employ[ing] any device, scheme, or artifice to defraud," and Rule 10b-5(c) prohibits "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit." *Id*. While "the second subparagraph of [Rule 10b-5] specifies the making of an untrue statement . . . [t]he first and third subparagraphs are not so restricted." *Lorenzo*, 139 S. Ct. at 1102. "These provisions capture a wide range of conduct." *Id*. at 1101.

"To maintain a 10b-5(a) or (c) claim, a plaintiff must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue." *Plumber & Steamfitters Local 773 Pension Fund, Boston Ret. Sys. v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021).

The Maverick Plaintiffs allege Defendants (including Carson) perpetrated a fraudulent "scheme" in violation of Rule 10b-5(a) and (c), which expressly prohibits such a "scheme." *See* ¶ 316. Plaintiffs purchased Mohawk "shares [that] were artificially inflated by Defendants' ***scheme.***" ¶ 1. Defendants perpetrated their "revenue recognition ***scheme***" that "misled [investors] as to the profitability of Mohawk's business. ¶ 10. Plaintiffs plead in detail the individual deceptive acts that Defendants, particularly Carson, perpetrated in furtherance of the scheme and for the express purpose of deceiving investors. *See* ¶¶ 56-126. Carson and the North America Flooring Division's "Saturday Scheme" of revenue and earnings manipulation was central to the fraud and particularly egregious. *See* ¶¶ 117-126. Plaintiffs plead Defendant Carson orchestrated the entire fraudulent scheme. *See* ¶¶ 30, 274-275. And, Plaintiffs plead they were injured when "disclosures revealed Mohawk's true financial condition that had been concealed by Defendants' fraudulent ***scheme***." ¶ 26. *See also* ¶¶ 127-140 (detailing how stock price declined as "Mohawk's fraudulent scheme" proved unsustainable); ¶ 267 ("Defendants' fraudulent scheme and misleading statements caused Mohawk's stock price to trade at artificially inflated prices"). Undoubtedly, Plaintiffs' case is not limited to the

making of false statements under Rule 10b-5(b). Carson is liable for perpetrating a fraudulent scheme prohibited by Rule 10b-5(a) and (c).

The Eleventh Circuit's decision in *U.S. Sec. & Exch. Comm'n v. Monterosso*, 756 F.3d 1326 (11th Cir. 2014) is on point. Like Defendant Carson in this case, the defendants in the *Monterosso* action participated in a "fraudulent scheme to generate fictitious revenue for a [ ] publicly traded" company. *Id*. at 1392. The fraudulent scheme caused the company's financial statements to be misleading, and the misleading financial statements were included in "period reports, securities registration statements, and press releases" reported to the public. *Id*. at 1334. Defendants – citing *Janus*, just as Defendant Carson does here – "argue[d] they did not 'make' those false statements" and "cannot be liable." *Id*. at 1334. The district court held at summary judgment, and the Eleventh Circuit affirmed, that defendants were liable under Rule 10b-5, ***despite not making any statements***, "because they made deceptive contributions to an overall fraudulent scheme." *Id*. Rejecting the *Janus* argument, the Eleventh Circuit ruled: "The case against [defendants] did not rely on their 'making' false statements, but instead concerned their commission of ***deceptive acts as part of a scheme to generate fictitious revenue*** for GlobeTel. ***Therefore,*** <u>***Janus has no bearing on this case***</u>." *Id*. This Court should likewise

- 14 -

reject Defendant Carson's *Janus* argument that, even though he orchestrated the fraudulent scheme to manipulate Mohawk's financial statements, he cannot be held liable because he purportedly made no statements. Other cases in this district are in accord. *See*, *e.g.*, *U.S. Sec. & Exch. Comm'n v. Strebinger*, 114 F. Supp. 3d 1321, 1331 (N.D. Ga. June 11, 2015) (distinguishing *Janus* and upholding cause of action under Rule 10b-5(a) and (c), where defendant "was part of a scheme . . . to improperly inflate [the corporation's] stock price" and fact defendant himself had not "made a misstatement in furtherance of this scheme . . . did not alter this analysis").[3]

Carson – acknowledging Section 10(b) liability is not limited to those who "make" a statement – attempts to distinguish *Lorenzo* by arguing that its holding, and by extension Rule 10b-5(a) and (c), are limited only to a person "who **disseminates** false or misleading statements." Carson Mem. at 21. Nothing could be further from the truth. The plain language of Rule 10b-5(a) and (c) is sweeping

---

[3] *See also U.S. Sec. & Exch. Comm'n v. Sequential Brands Grp., Inc.*, 2021 U.S. Dist. LEXIS 188465, at *16 (S.D.N.Y. Sept. 30, 2021) (violations of Rule 10b-5(a) and (c), where "accounting and finance personnel" engaged in a "deliberate course of conduct continued for over a year" to manipulate the company's financial statements).

in the types of fraudulent conduct the Rule prohibits, and is not limited merely to the dissemination of a false statement. Indeed, the Supreme Court analyzed the "expansive language" of both Rule 10b-5(a) and (c) and held: "These provisions capture a wide range of conduct." *Lorenzo*, 139 S. Ct. at 1101-02. Said another way, the law was "designed to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits" and is "intended to root out ***all manner of fraud*** in the securities industry." *Id*. at 1103-1104. Carson's contention that Rule 10b-5 only prohibits the making or disseminating of a false and misleading statement is entirely baseless, and contrary to the very language of Rule 10b-5(a) and (c).

Finally, Plaintiffs also properly plead Carson is liable under Rule 10b-5(b) for making false and misleading statements – particularly those statements concerning Flooring North American – in Mohawk's public SEC filings and press releases. Indeed, as the Court recognized in the Class Action, Carson "***approved*** . . . the [false information in] financial reports of Mohawk's Flooring, N.A. division [ ] which was provided to investors." *See* Class MTD Order at 45-46. Carson had full ownership of the Flooring North America division's financial statements included in press releases and SEC filings. ¶ 30. Plaintiffs plead Mohawk made numerous

false and misleading statements specific to the Flooring North America division. *See, e.g.*, ¶¶ 169, 191, 197, 204, 211, 222, 228, 235, 238, 255. Carson, as the head of the Flooring North America division possessed the power and authority to control the contents of Mohawk's public statements, particularly as they concerned the Flooring North America division, and had the authority to prevent any such false and misleading statements from being issued or cause them to be corrected. ¶ 319.

The Complaint more than satisfies the *Janus*-standard for "making" a false statement. "Courts applying *Janus* have emphasized that *Janus* did not alter the well-established rule that a corporation can act only through its employees and agents. Importantly, *Janus* does not stand for the proposition that officers cannot be liable for false and misleading statements in their own company's financial statements." *U.S. Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp.*, 2021 U.S. Dist. LEXIS 89518, *56 (S.D. Fl. May 11, 2021). Further, "[m]ore than one person or entity may have authority over a statement and therefore may be considered the maker of a false statement or responsible for a material omission." *U.S. Sec. & Exch. Comm'n v. Lottonet Operating Corp.*, 2017 U.S. Dist. LEXIS 51390, *32-*33 (S.D. Fla. March 31, 2017). "[C]orporate officers who work together in the same entity can be held jointly responsible on a theory of primary liability. It is not inconsistent

with *Janus* to presume that ***multiple people in a single corporation have the joint***

***authority*** to make a misstatement." *Id*. Finally, "the question whether a defendant

in fact exercised the requisite control over the content of the statement is ***an***

***inherently fact-bound inquiry***." *Complete Bus. Sols. Grp*., 2021 U.S. Dist. LEXIS

89518, *57-*58.

Under these standards, Plaintiffs plead not only that Carson participated in a

fraudulent scheme in violation of SEC Rule 10b-5(a) and (c), but that he also made

false and misleading statements to investors in violation of SEC Rule 10b-5(b).

## C.    Plaintiffs State a Claim for Violation of Section 18

In pertinent part, Section 18 of the Exchange Act, 15 U.S.C. § 78r, expressly

provides for liability of "[a]ny person who shall make ***or cause to be made*** any

statement in any" SEC filing that is "false or misleading with respect to any material

fact." The Eleventh Circuit recognizes "to 'cause' means 'to bring about or effect.'"

*United States v. Guevara*, 894 F.3d 1301, 1308 (11th Cir. 2018) (quoting Black's

Law Dictionary (10th ed. 2014), and holding car purchaser that utilized a "straw

buyer" caused the car dealer to file a false report). Undoubtedly, Plaintiffs plead

that Defendant Carson, if he did not actually make false statements, ***"cause[d]"***

***Mohawk to make*** false and misleading statements of material facts in Mohawk's

SEC filings. *See*, *e.g.*, ¶ 30.

Defendant Carson argues Plaintiffs' Section 18 claim must be dismissed for

the same reason Plaintiffs' Section 10(b) and Rule 10b-5(b) claim should be

dismissed; that is, Carson did not "***make***" a false and/or misleading statement as per

the Supreme Court's holding in *Janus*. Carson Mem. at 22. This argument is

fundamentally flawed. This Court cannot look to *Janus* and Rule 10b-5(b) to define

the scope of liability under Section 18. There is a clear difference in language

between (i) Rule 10b-5(b), which limits liability to those who "***make*** any untrue

statement of a material fact" and, (ii) Section 18, which holds liable anyone "who

shall make ***or cause to be made*** any [false or misleading] statement[.]" The

language of Section 18 – "shall make or cause to be made" – is much wider in scope

than the language of Rule 10b-5(b).

Further, *Janus* does not limit the scope of liability under Section 18. The

Eleventh Circuit held that *Janus* is limited in its scope to interpreting the specific

language of Rule 10b-5(b): "*Janus* addressed ***the scope of Rule 10b-5(b)*** and the

language providing it is unlawful to '***make*** any untrue statement of a material fact'

in connection with the purchase or sale of securities. . . . *Janus* ***only*** discussed what

it means to '***make***' a statement ***for purposes of Rule 10b-5(b)***." *U.S. Sec. & Exch. Comm'n v. Monterosso*, 756 F.3d at 1334. *Janus* did not interpret (or render any ruling as to the scope of) the language in Section 18 holding liable those who "cause [false statements] to be made."

To adopt Carson's argument would render an entire clause of Section 18 – "or cause to be made" – meaningless, as the words "or cause to be made" would have no independent meaning from the words "to make." Such an interpretation violates the "surplusage cannon" of statutory interpretation: "If possible, every word and every provision is to be given effect. . . .  None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." *Appling v. Lamar, Archer & Cofrin, LLP (In re Appling)*, 848 F.3d 953, 959 (11th Cir. 2017).

Section 18 expressly provides for the liability of "[a]ny person who shall make ***or cause to be made*** any statement in any" SEC filing that is "false or misleading." Carson caused Mohawk to include false and misleading financial statements in the Company's SEC filings. Carson violated the clear language of Section 18, and nothing in *Janus* can change the clear language of the statute.

### D.    Plaintiffs Plead a Section 20(a) Claim

"To state a claim under § 20(a), [Plaintiffs] must allege three elements: (1) that [Mohawk] committed a primary violation of the securities laws; (2) that the individual defendants had the power to control the general business affairs of [Mohawk]; and (3) that the individual defendants had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Defendant Carson argues (i) Mohawk did not commit a primary violation, and (ii) Mr. Carson did not have control over Mohawk and did not have responsibility or control over the corporate policy that resulted in the primary liability. Carson Mem. at 23.

With respect to Carson's first argument, for the reasons set forth in Plaintiffs' Main Opposition directly addressing Mohawk's arguments, Plaintiffs properly plead that Mohawk committed primary violations of the securities laws.

Regarding Carson's second argument, Plaintiffs plead Carson had a position of control and authority as a senior officer of Mohawk, he controlled the contents of various false and misleading statements issued to the public, and he (along with the other Individual Defendants) exercised power and authority to cause Mohawk

to engage in the wrongful acts alleged in the Complaint. ¶ 340. This is sufficient to plead control. "Allegations of control are not subject to the Rule 9(b) particularity requirement, since fraud is not an element of control person liability." *Miller v. Dyadic Int'l*, 2009 U.S. Dist. LEXIS 151788, *35 (S.D. Fla. Sept. 29, 2009).

Specifically, Carson was head of the division in which the alleged fraud took place; Carson was Mohawk's President of Flooring North America from July 2011 until November 12, 2018. ¶ 30. This is the business unit in which the fraud was concentrated. ¶¶ 274-275. Carson was responsible for – and admits he had "ownership" of – Flooring North America's financial reporting. ¶ 30. Further, Carson was a member of Mohawk's "world-wide leadership team" and described by Mohawk as "an 'executive employee' and a 'key employee,' as those terms are defined in O.C.G.A. 13-8-51." *Id*. This is more than sufficient to plead control liability.

### E.    Plaintiffs' State Law Claims Should Not Be Dismissed

Defendant Carson argues Plaintiffs' state law claims – that is, causes of action under common law fraud, negligent misrepresentation, violations of the GSA, and violations of Georgia RICO – should all be dismissed for the reasons set

forth in the Mohawk Memorandum. *See* Carson Mem. at 23-24. These arguments fail for the same reasons articulated in Plaintiffs' Main Opposition.

Carson makes no independent argument for dismissal of Plaintiffs' Georgia RICO claims. Thus, these RICO claims should not be dismissed as to Carson.

Carson also argues that Plaintiffs' GSA, common law fraud, and negligent misrepresentation claims should be dismissed because he did not "make" a statement. Carson Mem. at 24.

Like Rule 10b-5(a) and (c), the GSA is not limited to imposing liability upon those who "make" a false statement. The GSA mirrors Rule 10b-5. O.C.G.A. § 10-5-50 provides:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly: (1) ***To employ a device, scheme, or artifice to defraud***; (2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading; or (3) ***To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.***

*Id*. Accordingly, as set forth above, Carson clearly committed deceptive acts and orchestrated a scheme to defraud, which are violations of the GSA. The motion to dismiss the GSA claim ought to be denied.

- 23 -

In addition, as set forth above, Carson made certain of the false and misleading statements issued by Mohawk. Accordingly, Carson's motion to dismiss the common law fraud and negligent misrepresentation claims should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Carson's motion to dismiss should be denied.

Respectfully submitted this 28th day of January, 2022.

/s/Karen E. Bain
Karen E. Bain
Georgia Bar No. 495153
Henner & Scarbrough, LLP
2000 RiverEdge Parkway
Suite 550
Atlanta, GA  30328
Tel: (470) 531-3071
Fax: (470) 531-3063
Email: kbain@henscarlaw.com

DIETRICH SIBEN THORPE LLP
MATTHEW P. SIBEN (*pro hac vice*)
2292 Faraday Ave., Suite 100
Carlsbad, CA 92008
Telephone: (310) 300-8450
Facsimile: (310) 300-8401
matthew@dstlegal.com

– and –

DAVID A. THORPE (*pro hac vice*)
SHAWN M. HAYS (*pro hac vice*)
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Telephone: (310) 300-8450
Facsimile: (310) 300-8401
david@dstlegal.com


Attorneys for Plaintiffs Maverick
Fund, Ltd., Maverick USA, L.P.,
Maverick Fund II, Ltd., Maverick
Long Fund, Ltd., Maverick Long
Enhanced Fund, Ltd., and Sprugos
Investments IX, L.L.C.


## LOCAL RULE 7.1D CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

*/s/Karen E. Bain*
Karen E. Bain
Georgia Bar No. 495153
Henner & Scarbrough, LLP
2000 RiverEdge Parkway
Suite 550
Atlanta, GA  30328
Tel: (470) 531-3071
Fax: (470) 531-3063
Email: kbain@henscarlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 28, 2022, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of the filing to all counsel of record.

> */s/Karen E. Bain*
> Karen E. Bain
> Georgia Bar No. 495153
> Henner & Scarbrough, LLP
> 2000 RiverEdge Parkway
> Suite 550
> Atlanta, GA  30328
> Tel: (470) 531-3071
> Fax: (470) 531-3063
> Email: kbain@henscarlaw.com