UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

———————————————— x

MAVERICK FUND, LTD.,                    :    Civil Action No.
MAVERICK USA, L.P., MAVERICK            :
FUND II, LTD., MAVERICK LONG            :    4:21-cv-11-ELR
FUND, LTD., MAVERICK LONG               :
ENHANCED FUND, LTD., and                :
SPRUGOS INVESTMENTS IX,                 :
L.L.C.,                                 :
                                        :
                    Plaintiff,          :
                                        :
vs.                                     :
                                        :
MOHAWK INDUSTRIES, INC.,                :
JEFFREY S. LORBERBAUM, FRANK            :
H. BOYKIN and BRIAN CARSON              :
                                        :
                    Defendants.         :
                                        :
                                        :
                                        :
                                        :
———————————————— x


PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT FRANK H. BOYKIN'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ...............................................................3

III.  ARGUMENT .......................................................................................3

    A.    Boykin Made False and Misleading Statements ...................................3

    B.    Plaintiffs Plead a Strong Inference of Scienter .....................................9

    C.    Plaintiffs Plead Loss Causation...........................................................17

    D.    Plaintiffs State a Claim for Violation of Section 18 ...........................17

    E.    Plaintiffs Plead a Section 20(a) Claim ................................................17

    F.    Plaintiffs Plead Common Law Fraud and Negligent
            Misrepresentation Claims Against Boykin .........................................20

    G.    Plaintiffs Plead Boykin Violated the Georgia Securities Act .............21

    H.    Plaintiffs Plead Boykin Violated Georgia RICO ...............................22

IV.  CONCLUSION ..................................................................................25

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1109 (10th Cir. 2003)..................20

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002)..................................7

*Bibb Cty. Sch. Dist. v. Dallemand*, 2019 U.S. Dist. LEXIS 59922, *32,
    fn. 15 (M.D. Ga. Apr. 8, 2019)......................................................................24

*City of St. Clair Shores Gen. Emples. Ret. Sys. v. Lender Processing
    Servs., Inc.*, 2012 U.S. Dist. LEXIS 44474, *9 (M.D. Fla. March
    30, 2012)........................................................................................................4

*Constr. Indus. & Laborers Joint Pension Trust v. Carbonite, Inc.*, 2021
    U.S. App. LEXIS 37935, *15 (1st Cir. Dec. 22, 2021)................................14

*In re CenturyLink Sales Practices & Secs. Litig.*, 403 F. Supp. 3d 712,
    724 (D. Minn. 2019) .......................................................................................7

*In re Ebix, Inc. Secs. Litig.*, 898 F. Supp. 2d 1325, 1344 (N.D. Ga. 2012).........9, 10

*In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y.
    2012) ..............................................................................................................4

*In re HD Supply Holdings, Inc. Sec. Litig.*, 341 F. Supp. 3d 1342, 1361
    (N.D. Ga. 2018) ...........................................................................................12

*In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008) ............7

*In re Rocket Fuel, Inc. Secs. Litig.*, 2015 U.S. Dist. LEXIS 171552, *29
    (N.D. Cal. Dec. 23, 2015)..............................................................................5

*In re Vale S.A. Sec. Litig.*, 2017 U.S. Dist. LEXIS 42513, *102 (S.D.N.Y.
    March 23, 2017)..............................................................................................5

*Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare
    Fund v. Omnicare, Inc.*, 583 F.3d 945 (6th Cir. 2009)..................................6

# TABLE OF AUTHORITIES

**Page**

*Keippel v. Health Ins. Innovations, Inc.*, 2019 U.S. Dist. LEXIS 191123, *27 (M.D. Fla. Nov. 4, 2019) ........................................................................20

*Luczak v. Nat'l Bev. Corp.*, 812 Fed. Appx. 915, 919-920 (11th Cir. 2020) ................................................................................. 21, 22

*Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008) ............. 18, 21

*Schnall v. Annuity & Life Re (Holdings), LTD.*, 2004 U.S. Dist. LEXIS 2859, *32 (S.D.N.Y. Feb. 22, 2004) ............................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007)..............8, 9

*U.S. Sec. & Exch. Comm'n v. Brown*, 878 F. Supp. 2d 109, 116 (D.D.C. 2012) ......................................................................................4

*U.S. Sec. & Exch. Comm'n v. Jones*, 2015 U.S. Dist. LEXIS 134219, *21-*23 (D. Utah Dec. 18, 2015) ..................................................................8

*U.S. Sec. & Exch. Comm'n v. Sequential Brands Grp., Inc*., 2021 U.S. Dist. LEXIS 188465, *25 (S.D.N.Y. Sept. 30, 2021) ....................................7

*United States v. Godwin*, 765 F.3d 1306, 1323 (11th Cir. 2014) ...........................24

**STATUTES**

O.C.G.A. § 16-14-8................................................................................22

Plaintiffs Maverick Fund, Ltd., Maverick USA, L.P., Maverick Fund II, Ltd., Maverick Long Fund, Ltd., Maverick Long Enhanced Fund, Ltd., and Sprugos Investments IX, L.L.C. (hereafter referred to collectively as "Maverick" or "Plaintiffs") respectfully submit this memorandum in opposition to Defendant Frank H. Boykin's Motion to Dismiss this action ("Boykin Mem.") (ECF No. 35).

Defendant Boykin relies upon and incorporates Defendants Mohawk Industries, Inc. ("Mohawk") and Jeffrey S. Lorberbaum's Motion to Dismiss this action (ECF No. 36) (referred to herein as the "Mohawk Memorandum"). *See* Boykin Mem. at 2, fn. 2. Thus, Plaintiffs incorporate their Opposition to the Mohawk Memorandum, referred to as the "Main Opposition."

## I.    INTRODUCTION

Although Defendant Boykin served as Mohawk's Chief Financial Officer ("CFO") from January 2005 through April 2019, and literally certified to the public the accuracy of Mohawk's filings with the Securities and Exchange Commission ("SEC"), he would have this Court believe he neither knew about the years-long fraudulent scheme to manipulate Mohawk's financial statements that was pervasive within Mohawk's largest division, nor that he made any of the false and misleading statements in Mohawk's SEC filings and press releases. Boykin's motion strains

credulity. Boykin actually signed Mohawk's SEC filings, and therefore – as authority makes clear – he "made" the alleged false and misleading statements therein. To conclude otherwise would render his signature on those documents meaningless. *See* § III.A. Further still, Boykin claims he had no control over Mohawk and, thus, cannot be liable for Mohawk's violations of the securities laws. But, as the Company's CFO, Boykin is simply wrong as a matter of law and common sense because a CFO (by definition) has control over a public company's financial disclosures. *See* § III.E. As set forth herein, Defendant Boykin makes a whole host of arguments that simply do not hold up to scrutiny. Accordingly, Defendant Boykin's motion to dismiss should be denied and Plaintiffs permitted to proceed as soon as possible with their own discovery as discovery in the related federal securities Class Action has already commenced.[1]

---

[1] References to the "Class Action" are to *Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc. and Jeffrey S. Lorberbaum*, No. 4:20-cv-00005-ELR (N.D. Ga.). Unless otherwise noted, all emphasis is added and all internal quotations and citations omitted. References to "¶__" are to the Complaint for Violations of the Federal Securities Laws and State Law (ECF No. 1).

## II.    FACTUAL BACKGROUND

Plaintiffs refer the Court to its Order denying Defendants' motion to dismiss the Class Action Consolidated Complaint. *See* Class Action ECF No. 60 (referred to herein as the "Class MTD Order"). Where pertinent, Plaintiffs will refer the Court to allegations in Plaintiffs' Complaint.

## III.    ARGUMENT

### A.    Boykin Made False and Misleading Statements

Defendant Boykin fundamentally misrepresents Plaintiffs' allegations when he asserts "[t]he only statements that Maverick attributes to Mr. Boykin occurred during Mohawk's earnings calls." Boykin Mem. at 11 (citing ¶¶ 186, 187, and 231). To the contrary, as pleaded in the Complaint, Boykin – as Mohawk's CFO – clearly "made" the false and misleading statements contained in Mohawk's SEC filings that Boykin signed, as well as Mohawk's press releases that Boykin approved before publication. Plaintiffs plead: "***Defendant Boykin signed and certified*** the purported accuracy of Mohawk's quarterly and annual SEC filings throughout the relevant period." ¶ 29. The Complaint pleads numerous false and misleading statements in Mohawk's SEC filings ***signed (and therefore made) by Defendant Boykin***. *See* ¶¶ 172-177 (2016 Form 10-K signed by Boykin); ¶¶ 188-195 (1Q2017 Form 10-Q signed by Boykin); ¶¶ 201-209 (2Q2017 Form 10-Q signed by Boykin);

¶¶ 219-226 (3Q2017 Form 10-Q signed by Boykin); ¶¶ 235-241 (2017 Form 10-K signed by Boykin); ¶¶ 252-258 (1Q2018 Form 10-Q signed by Boykin).

The caselaw is clear, by signing the SEC filings Boykin "made" the false and misleading statements in Mohawk's SEC filings. *See*, *e.g.*, *U.S. Sec. & Exch. Comm'n v. Brown*, 878 F. Supp. 2d 109, 116 (D.D.C. 2012) ("Both before and after the decision in *Janus*, courts have consistently held that the signer of a corporate filing is its 'maker.'"); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012) ("In the post-*Janus* world, an executive may be held accountable where the executive had ultimate authority over the company's statement; signed the company's statement; ratified and approved the company's statement; or where the statement is attributed to the executive."). "Nothing in *Janus* stands for the proposition that CEOs and CFOs cannot be liable for false and misleading statements in their own company's financial statements, for which they signed Sarbanes-Oxley certifications." *City of St. Clair Shores Gen. Emples. Ret. Sys. v. Lender Processing Servs., Inc.*, 2012 U.S. Dist. LEXIS 44474, *9 (M.D. Fla. March 30, 2012).

Further, Plaintiffs plead Boykin made the statements in Mohawk's press releases. *See* ¶¶ 166-169, 171, 182-184, 196-198, 210-212, 227, 246. Boykin

- 4 -

"possessed the power and authority to control the contents of Mohawk's publicly disseminated information" including "press releases." ¶ 319. This alone is sufficient. *See In re Rocket Fuel, Inc. Secs. Litig.*, 2015 U.S. Dist. LEXIS 171552, *29 (N.D. Cal. Dec. 23, 2015) ("the complaint does indeed allege that the three Insider defendants 'possessed the power and authority to control the contents of the Company's press releases [and] investor and media presentations'" thus plaintiffs plead the "Insider defendants had 'ultimate authority' over the statements"). *See also In re Vale S.A. Sec. Litig.*, 2017 U.S. Dist. LEXIS 42513, *102 (S.D.N.Y. March 23, 2017) (individual defendant made company statements in "sustainability reports" he did not sign, but which he received prior to publication and had "the ability and opportunity to prevent their issuance or cause them to be corrected" and which fell under his "responsibilities at" the company).

Moreover, because Mohawk's press releases and SEC filings included the same financial information – and Boykin, as Mohawk's CFO, signed and certified the accuracy of (and his responsibility for) Mohawk's publicly reported financial results filed with the SEC – it is nonsensical for Boykin to assert he did not have responsibility for (and authority over) Mohawk's financial disclosures made in press releases. The financial information in Mohawk's press releases matched the

financial information in Mohawk's SEC filings. *See*, *e.g*., ¶ 235 ("The 2017 Form 10-K repeated the same false financial results reported in the 2.8.18 Press Release indicated above."). Boykin, as he certified in Mohawk's SEC filings, had ultimate authority over Mohawk's public disclosures of its financial statements. *See* § III.E., *infra* (quoting Boykin's certifications attesting to his responsibilities and control over Mohawk's financial reporting).

Boykin also argues that because Mohawk has never restated its financial statements, the Court should find that Mohawk's statements during the relevant period were not false and misleading. *See* Boykin Mem. at 11. This argument fails for numerous reasons. ***First***, the Court has already determined that Mohawk's statements during the relevant period – signed by and made by, among others, Boykin – were false and misleading. *See* Class MTD Order at 15-37. There is no basis for the Court to revisit what was decided in the Class MTD Order. ***Second***, Boykin mischaracterizes the sole authority he cites for this proposition. *See* Boykin Mem. at 11, quoting *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc*., 583 F.3d 945 (6th Cir. 2009). The cited quotation concerns loss causation, not whether the statements were false and misleading.

***Third***, the law is clear that a "restatement or auditor finding is not a prerequisite to alleging fraud; such a requirement would shift to accountants the responsibility that belongs to the courts." *In re CenturyLink Sales Practices & Secs. Litig.*, 403 F. Supp. 3d 712, 724 (D. Minn. 2019). To require a restatement "would also allow officers and directors of corporations to exercise an unwarranted degree of control over whether they are sued, because they must agree to a restatement of the financial statements." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1246 (N.D. Cal. 2008). *See also Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002) (same); *U.S. Sec. & Exch. Comm'n v. Sequential Brands Grp., Inc*., 2021 U.S. Dist. LEXIS 188465, *25 (S.D.N.Y. Sept. 30, 2021) (same).

Finally, many of the alleged false and misleading statements attributed to Defendant Boykin were not audited or approved by Mohawk's auditor, and therefore would not be reviewed by the auditor for restatement. For example, Mohawk's 2017 Form 10-K filed on February 28, 2018, which Defendant Boykin signed and certified to be accurate, includes false and misleading statements attributing Mohawk's increased earnings to legitimate causes and not the fraudulent scheme. ¶¶ 236-238. These statements are found in the section of the Form 10-K titled "Management's Discussion and Analysis of Financial Condition and Results

of Operations." *See* Ex. A to the Declaration of Matthew P. Siben (filed concurrently herewith) at page 16-19.[2] Similar false statements from the ***unaudited*** "Management's Discussion and Analysis" portion of Mohawk's SEC filings, can be found at ¶¶ 189-191, 202-204, 220-222, 255. Auditors ***do not*** review the portion of a company's Form 10-Ks or Form 10-Qs titled "Management's Discussion and Analysis." *See U.S. Sec. & Exch. Comm'n v. Jones*, 2015 U.S. Dist. LEXIS 134219, *21-*23 (D. Utah Dec. 18, 2015) ("A Management Discussion and Analysis ('MD&A') is a document written for inclusion in public filings. . . . MD&A's are not audited.").

Mohawk made false and misleading statements, but Mohawk is a corporation and can only act through its human employees. Defendant Boykin was Mohawk's CFO, and he not only had the responsibility for making Mohawk's statements in its SEC filings – he signed certifications attesting to this fact. Accordingly, Mohawks' false and misleading statements are also Boykin's false and misleading statements.

---

[2] On a motion to dismiss, the Court may consider SEC filings and other documents incorporated into the Complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The attached exhibits are part of Mohawk's Form 10-K filing referenced in the Complaint. *See* ¶¶ 235-241. Plaintiffs also plead that Boykin signed the specific certifications attached as exhibits. ¶ 29.

Whether or not Mohawk's auditor reviewed, or caused Mohawk to restate, Mohawk's financial disclosures is irrelevant as a matter of law. To conclude otherwise would effectively cede to Defendants and their auditors the role of the factfinder and insulate all companies from ever being liable for securities fraud no matter how pernicious their conduct. Accordingly, this Court ought to reject Defendant Boykin's argument that he cannot be liable for the false and misleading statements Plaintiffs plead, and which this Court has already found to be actionable against Mohawk in the Class Action.

### B.    Plaintiffs Plead a Strong Inference of Scienter

"To determine whether scienter has been adequately pled, the Court must consider 'whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'" *In re Ebix, Inc. Secs. Litig.*, 898 F. Supp. 2d 1325, 1344 (N.D. Ga. 2012) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)). "Circumstantial evidence can be sufficient to establish a strong inference of scienter." Class MTD Order at 48.

"With regard to [i]ndividual [d]efendants, the question is whether a reasonable person would infer that there was at least a fifty-fifty chance that the

individual defendants knew about the alleged fraud (or were severely reckless in not knowing about it) based on its nature, duration, or amount." Class MTD Order at 46.

A strong inference of scienter is supported where, as here, the fraud concerned the "core operations" of the defendant corporation, as this increases the likelihood that management would be aware of the problem. *See* Class MTD Order at 44 (noting "Flooring, N.A.'s substantial contribution to Mohawk's overall operations serve to bolster any inference of scienter"). *See also* ¶ 47 (importance of Flooring North America segment); ¶¶ 50-55 (importance of LVT to Mohawk's overall business); ¶ 274 (fraud concentrated in North America segment).

Further, a strong inference of scienter is supported where, as here, "the issues addressed in the" Complaint "are naturally within the purview of the company's top executives. The type and amount of fraud alleged here would not be hidden from the CEO or the CFO of the company." *In re Ebix, Inc. Secs. Litig.*, 898 F. Supp. 2d at 1347. *See also* Class MTD Order at 48-49.

## Defective LVT and Bloated Inventories

Defendant Boykin knew of or recklessly disregarded that Mohawk was building massive amounts of defective LVT and carpet that Mohawk maintained as

"first quality" inventory on its balance sheet without writing it down, even though the LVT and carpet could only be sold at a huge discount (if at all). Given the size of this problem, it is simply inconceivable to assume Mohawk's Chief Financial Officer was blissfully ignorant to these facts. Indeed, in a twist of irony, Boykin (and others) were not ignorant of the problem as they quite literally had to step over Mohawk's obviously defective LVT every day on the way to work – as ***Mohawk's own corporate headquarters installed Mohawk LVT that wouldn't lay flat and all peeled back up***. ¶¶ 65, 286.

Former employees assert upper management was well-aware of Mohawk's defective LVT problem, which was regularly discussed at weekly and monthly meetings attended by Company leadership and executives. ¶¶ 279-280. *See also* ¶¶ 70, 76, 81, 83.

Mohawk's public statements about LVT were so incongruous with the truth, as indicated in Mohawk's internal reports that Boykin received, such that there is no way Boykin could ***not*** have been alerted to the discrepancy. ¶¶ 296-301. Defendants told investors Mohawk was "capacity constrained" – selling all of the LVT that Mohawk could make. ¶¶180, 213, 250. But, in truth, Mohawk created weekly inventory reports showing that Mohawk carried in its inventory massive

amounts of LVT – which weekly inventory reports were provided to Mohawk's senior management every Monday morning. ¶¶ 83, 298. If Mohawk had in fact been capacity constrained on the sale of LVT, there would clearly be no need to store excess LVT in inventory – as it would all be shipped to purchasers. Boykin knew of, or recklessly disregarded, these inventory reports showing excess (defective) LVT stored in inventory, which obviously contradicted Mohawk's public statements. A strong inference of scienter is supported "where, by virtue of their positions, the individual defendants had unfettered access to internal information and ample opportunity to prevent the release of any misleading statement." *In re HD Supply Holdings, Inc. Sec. Litig.*, 341 F. Supp. 3d 1342, 1361 (N.D. Ga. 2018). *See also* Class MTD Order at 49.

Mohawk employees described the amount of surplus LVT in storage as – in their own words – "insane" and "buildings and buildings" of defective product. ¶¶ 85, 87, 282. Mohawk filled at least 100 empty trailers with scrap LVT and Mohawk paid millions of dollars to store defective LVT that could only be sold for "pennies on the dollar by the truckload." ¶¶ 279-280. *See also* ¶¶ 67-69, 87 (describing sales at huge discounts); ¶¶ 84-87, 91-93 (describing amount of defective LVT and carpet and cost to warehouse it). There is no way any CFO could be ignorant of such large

- 12 -

sales at a discount or such large expenditures of money to store product that was not being sold.

Boykin specifically had reason to know about Mohawk's inventory of LVT and carpet. Boykin certified Mohawk's financial disclosures were accurate. ¶ 29. In so doing, Boykin attested to the fact he established and had responsibility for internal controls over (among other things) inventory reporting. *See* § III.E., *infra* (addressing control person allegations and quoting certifications).

More significantly, before the relevant period, Boykin personally and specifically told investors ***he*** discovered ***and fixed*** inventory reporting problems at Mohawk. In 2016, just prior to the relevant period, Mohawk was forced to disclose (in an SEC filing that Boykin signed) that the Company's auditor ***and*** "***Chief Financial Officer***" had found "a material weakness in internal control over financial reporting related to documenting management's ***inventory control oversight***" and that to fix this problem with the "valuation of obsolete inventory," Mohawk implemented "specific monitoring activities." ¶¶ 175-176, 303. Thus, given that Mohawk had similar inventory problems previously – and Boykin was personally responsible for fixing and monitoring the internal controls over inventory – it would be unreasonable to infer that during the relevant period Boykin

was somehow ignorant of Mohawk's massive amount of defective LVT and carpet in inventory that he was supposed to be monitoring. ¶¶ 302-304.

These well-pleaded facts, viewed cumulatively, more than sufficiently plead a strong inference that Defendant Boykin knew – or was reckless in not knowing – that Mohawk had a defective LVT problem and was carrying excess inventory on its balance sheet that needed to be marked down to a much lower valuation.

The truth concerning Mohawk's LVT production and inventory levels was of such obvious importance to Mohawk and its investors, and so obviously different than what Defendants told the public, that logic dictates Boykin would have been "paying close attention" to these issues and "that close attention would have revealed an incongruity so glaring as to make the need for further inquiry obvious." *Constr. Indus. & Laborers Joint Pension Trust v. Carbonite, Inc.*, 2021 U.S. App. LEXIS 37935, *15 (1st Cir. Dec. 22, 2021) (reversing dismissal of securities fraud claims against CEO and CFO).

## Mohawk's Revenue Recognition Scheme

Plaintiffs plead in great detail the existence of a scheme to artificially inflate Mohawk's reported revenues and earnings by shipping product at the end of each quarter that customers neither needed nor requested, and would oftentimes reject –

many times because the customer wasn't even open for delivery (as in the "Saturday Scheme"). *See* ¶¶ 110-126. This nationwide practice was called "draining the swamp" and the acknowledged goal was to meet Mohawk's financial targets on Wall Street. ¶¶ 114-117. These were clear and obvious violations of SEC guidance and Generally Accepted Accounting Principles ("GAAP") – which required Mohawk to have "persuasive evidence of an arrangement" between Mohawk and the customer that the sale was real and delivery had occurred. ¶¶ 104-106, 109. But, Mohawk recognized revenue where there was no arrangement with the customer, and as soon as product left its factory, even if the product was never delivered or was rejected by the customer. ¶¶ 109, 112.

It would be one thing if Mohawk's low-level employees fudged some numbers on their own volition once in a while and Boykin was unaware. But that is not the case. Mohawk employed the Saturday Scheme from at least 2015 through the first quarter of 2020, across the United States, with Mohawk purporting to ship millions of pounds and millions of dollars of product – always on the last Saturday of the quarter – only to have 80% returned on that same day. ¶¶ 120-125.

What's more, Mohawk tracked these Saturday shipments in reports provided to all C-level executives of the Company, which would include Boykin, that showed a "spike" in revenues just as the quarter ended. ¶ 126.

It would be particularly illogical to assume Boykin remained blissfully ignorant of the scheme for two additional reasons. *First*, as Mohawk's CFO, Boykin was undoubtedly focused on setting and then meeting the Company's financial projections. *Second*, Mohawk told investors – in filings signed and certified by Boykin – that the Company had studied the implementation of new revenue recognition rules and the Company was in compliance with both the new and old rules. ¶ 305 (referencing ¶¶ 105-107, 194, 206, 224). Absent intent to deceive, no reasonable study of the Company's sales practices, particularly Mohawk's efforts to pull in future sales and the Saturday scheme, could possibly reach the conclusion the Company had properly recognized revenue in the 2017 to 2018 period. ¶ 306. As Mohawk's CFO, who signed and certified the Company's SEC filings, Boykin was undoubtedly responsible for these efforts to study Mohawk's revenue recognition practices. Boykin could only have been ignorant to the rampant revenue recognition abuses had he willfully ignored the obvious red flags.

### C.    Plaintiffs Plead Loss Causation

Defendant Boykin incorporates by reference Mohawk's Memorandum as it concerns loss causation. Boykin Mem. at 12. Defendant Boykin makes no independent argument against a finding of loss causation. For the reasons set forth in Plaintiffs' Main Opposition Brief directly addressing Mohawk's arguments, Plaintiffs adequately allege loss causation.

### D.    Plaintiffs State a Claim for Violation of Section 18

Defendant Boykin incorporates by reference Mohawk's Memorandum as it concerns the timeliness of Plaintiffs' Section 18 claims and whether Plaintiffs plead loss causation and reliance. Boykin Mem. at 12. Boykin makes no independent argument as to the viability of Plaintiffs' Section 18 claims. *Id*. For the reasons set forth in Plaintiffs' Main Opposition Brief directly addressing Mohawk's arguments, Plaintiffs' Section 18 claims are timely and Plaintiffs plead loss causation and reliance.

### E.    Plaintiffs Plead a Section 20(a) Claim

"To state a claim under § 20(a), [Plaintiffs] must allege three elements: (1) that [Mohawk] committed a primary violation of the securities laws; (2) that the individual defendants had the power to control the general business affairs of [Mohawk]; and (3) that the individual defendants had the requisite power to directly

or indirectly control or influence the specific corporate policy which resulted in primary liability." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Defendant Boykin argues (i) Mohawk did not commit a primary violation, and (ii) Mr. Boykin did not have responsibility or control over corporate policy that resulted in the primary liability. Boykin Mem. at 13.

With respect to Boykin's first argument, for the reasons set forth in Plaintiffs' Main Opposition directly addressing Mohawk's arguments, Plaintiffs properly plead that Mohawk committed primary violations of the securities laws.

Boykin's second argument is also wrong. Boykin was Mohawk's Chief Financial Officer. ¶ 29. Plaintiffs plead that Mohawk made false and misleading statements in, among other things, Mohawk's financial reports and SEC filings. *See*, *e.g.*, ¶¶ 235-241 (2017 Form 10-K). Boykin signed Mohawk's SEC filings and certified their accuracy, including the accuracy of the Company's financial disclosures, thus explicitly acknowledging his responsibility and control over Mohawk for such purposes. *See* ¶ 29. For example, in connection with Mohawk's 2017 annual report Form 10-K filed with the SEC on February 28, 2018, Boykin signed a certification stating (among other things): "The registrant's other certifying officer [Lorberbaum] and *I are responsible for establishing and maintaining*

*disclosure controls and procedures* (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and *internal control over financial reporting* (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant [Mohawk]. " Ex. B to the Declaration of Matthew P. Siben. Boykin also certified: "*The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company*." Ex. C to the Declaration of Matthew P. Siben. Defendant Boykin signed identical (or nearly identical) certifications for all of Mohawk's quarterly and yearly reports filed with the SEC. *See* ¶ 29. Plaintiffs will provide the Court with copies of these certifications should the Court request them, or if Defendants dispute that Boykin signed such certifications. Because Boykin literally signed his name certifying his responsibility for the accuracy of Mohawk's public filings and financial reporting, he cannot now credibly assert he is not liable as a control person of Mohawk for its false statements. *See Schnall v. Annuity & Life Re (Holdings), LTD.*, 2004 U.S. Dist. LEXIS 2859, *32 (S.D.N.Y. Feb. 22, 2004) (upholding control person liability for signer of SEC filings and holding "These approvals *through signing* sufficiently allege control over those who have been alleged to have violated Section 10(b), at

- 19 -

least in connection with the misrepresentations and omissions in those documents.").

Furthermore, case law universally recognizes that a company's CFO is a "control person" with regards to a company's financial statements and disclosures. *See Adams v. Kinder-Morgan, Inc*., 340 F.3d 1083, 1109 (10th Cir. 2003) (upholding control person claim under Section 20(a) and ruling: "As [the company's] chief financial officer, it is reasonable to infer that [the defendant] had at least indirect control over the [company's] financial reporting."); *Keippel v. Health Ins. Innovations, Inc.*, 2019 U.S. Dist. LEXIS 191123, *27 (M.D. Fla. Nov. 4, 2019).

### F. Plaintiffs Plead Common Law Fraud and Negligent Misrepresentation Claims Against Boykin

Defendant Boykin argues that Plaintiffs' common law fraud and negligent misrepresentation claims ought to be dismissed because Plaintiffs fail to plead (i) scienter, (ii) actual reliance, and (iii) loss causation. Boykin Mem. at 15-16.

Defendant Boykin's scienter argument with respect to the common law claims echoes his argument with respect to Plaintiffs Rule 10b-5 claim. Boykin Mem. at 15. But the legal standard is far different. Whereas Rule 10b-5 claims require the pleading of a strong inference of scienter as per the Private Securities

Litigation Reform Act, Plaintiffs' common law fraud and negligent misrepresentation claims do not require meeting such a high bar.

Plaintiffs' common law claims are merely subject to Rule 9(b), and "Rule 9(b) does ***not require a plaintiff to allege specific facts related to the defendant's state of mind*** when the allegedly fraudulent statements were made. Instead, as Rule 9(b) itself states, '[m]alice, intent, knowledge, and other conditions of a person's mind ***may be alleged generally***.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). *See also Luczak v. Nat'l Bev. Corp.*, 812 Fed. Appx. 915, 919-920 (11th Cir. 2020) (same). For the reasons stated in Section III.B, Plaintiffs more than adequately allege Boykin's scienter for the purposes of Plaintiffs' common law fraud and negligent misrepresentation claims.

With respect to pleading actual reliance and loss causation, Defendant Boykin merely incorporates by reference Mohawk's Memorandum. Boykin Mem. at 16. For the reasons set forth in Plaintiffs' Main Opposition directly addressing Mohawk's arguments, Plaintiffs properly plead actual reliance and loss causation.

### G.    Plaintiffs Plead Boykin Violated the Georgia Securities Act

***First***, Boykin argues the GSA claims are time barred for the same reasons set forth in the Mohawk's Memorandum. Boykin Mem. at 17. For the reasons set forth

in Plaintiffs' Main Opposition directly addressing Mohawk's arguments, Plaintiffs' GSA claims are not time barred.

**Second**, Boykin argues Plaintiffs have not sufficiently alleged scienter under the GSA. Boykin Mem. at 17. Like Plaintiffs' common law fraud and negligence claims, Plaintiffs GSA claims do not require pleading a strong inference of scienter. Scienter "***may be alleged generally***." *Luczak*, 812 Fed. Appx. at 920. As set forth above, Plaintiffs more than sufficiently allege scienter.

### H.    Plaintiffs Plead Boykin Violated Georgia RICO

Defendant Boykin does ***not*** dispute that Plaintiffs plead (i) the existence of a scheme to defraud or that the scheme used the mails and/or wires in furtherance of that scheme, or (ii) that Defendant Mohawk violated the GSA. *See* Boykin Mem. at 18-22.[3] Nor could he. The facts alleged ***undeniably*** demonstrate the existence of a fraudulent scheme at Mohawk to manipulate the Company's reported financial results and public statements concerning the Company's financial well-being.

---

[3] No Defendant asserts Plaintiffs' RICO claims are untimely. Plaintiffs may rely on violations of the GSA as RICO predicate acts even if the limitations period under the GSA has run as Defendants argue (which it has not), because the RICO statute provides for its own five-year limitations period. *See* O.C.G.A. § 16-14-8.

Despite the fact Mr. Boykin **_literally_** and **_expressly certified_** to investors that he was personally responsible for the Company's public statements concerning Mohawk's financial results, Defendant Boykin now tries to distance himself from the fraudulent scheme whose purpose was to manipulate those financial results.

Boykin argues that Plaintiffs fail to satisfy the pleading requirements of Georgia RICO because Plaintiffs do not allege **_he_** committed two predicate acts in furtherance of the fraudulent scheme. *See* Boykin Mem. at 18-21. Further, Defendant Boykin contends Plaintiffs "cannot satisfy Rule 9(b) by lumping Mr. Boykin together with other defendants[.]" Boykin Mem. at 19. But Plaintiffs do not do that. As set forth above, Plaintiffs plead Boykin personally signed and certified all of Mohawk's many false and misleading financial filings with the SEC during the relevant period. ¶ 29. Each filing – and there were many – constituted an act. Defendant Boykin certified each filing knowing, or recklessly disregarding, these filings were false and/or misleading. *See*, *e.g.*, ¶¶ 29, 32, 172, 178, 188, 201, 219, 235, and 252. Plaintiffs plead the date and content of each false and misleading statement; Plaintiffs explain why each statement was false and misleading; and, Plaintiffs plead how Plaintiffs were misled and why they purchased Mohawk shares as a result of the false statements in the filings certified by Boykin. ¶¶ 162-258.

Plaintiffs satisfy the Rule 9(b) standard. Further, as demonstrated above, these allegations are more than sufficient to allege that Boykin personally committed two predicate acts of: (i) mail and/or wire fraud, and (ii) violations of the GSA.[4] As such, the Georgia RICO claims are properly pleaded.

Finally, Boykin argues that Plaintiffs fail to allege a conspiracy to violate Georgia RICO, because Plaintiffs fail to allege the "existence of an illegal agreement." Boykin Mem. at 21-22. But, the existence of an agreement may be inferred based on the allegations. Where, as here, the "evidence [is] sufficient to show that [the defendant] committed at least two predicate acts related to the [plaintiff], [that] alone is enough to find that [the defendant] agreed to participate in a 'single objective' RICO conspiracy." *United States v. Godwin*, 765 F.3d 1306, 1323 (11th Cir. 2014). "A defendant's participation in a conspiracy ***may be inferred from the acts*** of his which furthered the objectives of the conspiracy." *Id. See also Bibb Cty. Sch. Dist. v. Dallemand*, 2019 U.S. Dist. LEXIS 59922, *32, fn. 15 (M.D. Ga. Apr. 8, 2019) (same).

---

[4] Accordingly, this Court need not address the issue of whether Plaintiffs properly plead Mr. Boykin committed theft by taking or deception.

In light of Defendant Boykin's predicate acts in violation of the GSA, and in furtherance of the fraudulent scheme, the Court may infer he agreed to participate in the RICO conspiracy.

## IV.   CONCLUSION

For the foregoing reasons, Defendants Boykin's motion to dismiss should be denied.

Respectfully submitted this 28th day of January, 2022.

> */s/Karen E. Bain*
> Karen E. Bain
> Georgia Bar No. 495153
> Henner & Scarbrough, LLP
> 2000 RiverEdge Parkway
> Suite 550
> Atlanta, GA  30328
> Tel: (470) 531-3071
> Fax: (470) 531-3063
> Email: kbain@henscarlaw.com
>
> DIETRICH SIBEN THORPE LLP
> MATTHEW P. SIBEN (*pro hac vice*)
> 2292 Faraday Ave., Suite 100
> Carlsbad, CA 92008
> Telephone: (310) 300-8450
> Facsimile: (310) 300-8401
> matthew@dstlegal.com

– and –

DAVID A. THORPE (*pro hac vice*)
SHAWN M. HAYS (*pro hac vice*)
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Telephone: (310) 300-8450
Facsimile: (310) 300-8401
david@dstlegal.com

Attorneys for Plaintiffs Maverick
Fund, Ltd., Maverick USA, L.P.,
Maverick Fund II, Ltd., Maverick
Long Fund, Ltd., Maverick Long
Enhanced Fund, Ltd., and Sprugos
Investments IX, L.L.C.

## LOCAL RULE 7.1D CERTIFICATION

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

*/s/Karen E. Bain*
Karen E. Bain
Georgia Bar No. 495153
Henner & Scarbrough, LLP
2000 RiverEdge Parkway
Suite 550
Atlanta, GA  30328
Tel: (470) 531-3071
Fax: (470) 531-3063
Email: kbain@henscarlaw.com

- 26 -

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 28, 2022, I filed a copy of the foregoing

document with the Clerk of Court using the CM/ECF system, which will

automatically send notice of the filing to all counsel of record.

> */s/Karen E. Bain*
> Karen E. Bain
> Georgia Bar No. 495153
> Henner & Scarbrough, LLP
> 2000 RiverEdge Parkway
> Suite 550
> Atlanta, GA  30328
> Tel: (470) 531-3071
> Fax: (470) 531-3063
> Email: kbain@henscarlaw.com