## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

MAVERICK FUND, LTD. et al.,

     Plaintiffs,

v.

MOHAWK INDUSTRIES, INC., et al.,

     Defendants.

Civil Action No.
4:21-cv-00118-VMC

## ORDER

The matter is before the Court on Defendants Mohawk Industries, Inc.

("Mohawk"), Jeffrey S. Lorberbaum, Frank H. Boykin, and Brian Carson's Motions

to Dismiss[1] and Defendants' Motion to Consolidate Cases (Doc. 53).

### I.   Background

Plaintiffs Maverick Fund, LTD., Maverick USA, L.P., Maverick Fund II,

LTD., Maverick Long Fund, LTD., Maverick Long Enhanced Fund, LTD., and

Sprugos Investments IX, L.L.C. (collectively, "Maverick") bring this individual

action for violations of the federal securities laws and various state laws. Maverick

purchased Mohawk common stock in the period between January 19, 2018 and

---

[1] Mohawk and Mr. Lorberbaum together filed one Motion to Dismiss (Doc. 36), and Mr. Boykin and Mr. Carson each filed individual Motions to Dismiss (Docs. 35 and 38, respectively).

June 30, 2018, and sold it over a three-month period starting July 26, 2018. (Doc. 1 ¶¶ 1, 26, 140).

### A. Related Actions

This case (the "Maverick Action") involves claims arising out of substantially the same subject matter and factual issues as the class action case previously filed in this district, *Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc. and Jeffrey S. Lorberbaum*, No. 4:20-cv-00005-VMC (N.D. Ga. 2020) (the "Class Action"). On September 29, 2021, the Court substantially denied Defendants' motion to dismiss in the Class Action (*see* Class Action Doc. 60, the "Class Action MTD Order"). On November 28, 2022, the Court granted class certification and defined the class as

> All persons or entities who purchased or otherwise acquired publicly traded common stock of Mohawk between April 28, 2017 and July 25, 2019, inclusive, and who were damaged thereby. Excluded from the Class are:
>
> (a) Defendants;
>
> (b) the officers and directors of Mohawk at all relevant times;
>
> (c) members of the officers' or directors' immediate families and their legal representatives, heirs, agents, affiliates, successors or assigns;
>
> (d) Defendants' liability insurance carriers, and any affiliates or subsidiaries thereof; and

(e) any entity in which Defendants or their immediate families have or had a controlling interest.

(Class Action Doc. 113). On January 20, 2023, Lead Plaintiff filed an Unopposed Motion for an Order Preliminarily Approving Class Action Settlement. (Class Action Doc. 119). After a telephone conference with the Court, Lead Plaintiff filed modified documents in support of that Motion, and on February 3, 2023, the Court granted the Motion. (Class Action Doc. 122). A settlement hearing for the Class Action is scheduled to take place on May 31, 2023 at 10:00 a.m. (*Id.* at 6).

Since the Maverick Action was filed on June 22, 2021, two additional individual related cases have been filed in this district: *Hound Partners Offshore Fund, L.P. et al. v. Mohawk Industries, Inc. et al.*, No. 4:22-cv-00073-VMC (N.D. Ga. 2022) (the "Hound Action"), and *Fir Tree Value Master Fund, L.P. v. Mohawk Industries, Inc. et al.*, Case No. 4:22-cv-00098-VMC (N.D. Ga. 2022) (the "Fir Tree Action"). Defendants have filed a Motion to Consolidate the Maverick Action, the Fir Tree Action, and the Hound Action. (Doc. 53). Plaintiffs in each Action do not object to consolidation for the purposes of discovery, but request that the Court rule separately on the Motions to Dismiss in each Action and that Plaintiffs be allowed to file their own individual summary judgment motions or responses, if they so choose. (Doc. 54).

3

**B. Relevant Facts**

The Court incorporates the facts as stated in the Order on the Motion to Dismiss in *Public Employees Retirement System of Mississippi v. Mohawk Industries, Inc. et al* (Class Action Doc. 60).

Maverick brings claims for:

1) Violation of § 10(b) of the Exchange Act and Rule 10b-5,

2) Violation of § 18 of the Exchange Act,

3) Violation of § 20(a) of the Exchange Act (against the Individual Defendants only),

4) Common law fraud,

5) Negligent misrepresentation,

6) Violations of the Georgia Uniform Securities Act ("GUSA") (under O.C.G.A. § 10-5-50),

7) Violations of the Georgia RICO Act (under O.C.G.A. § 16-14-4(a) and (b)),

8) Violations of the Georgia RICO Act – conspiracy (under O.C.G.A. § 16-14-4(c)),

9) Punitive damages (under O.C.G.A. § 51-12-5.1), and

10) Attorney's fees and expenses (under O.C.G.A. § 13-6-11).

(Doc. 1 at 131-160).

Plaintiffs in the Hound Action, filed March 25, 2022, bring identical claims to those in the Maverick Action. (Hound Action Doc. 1 at 137-164). Plaintiffs in the Fir Tree Action, filed April 26, 2022, bring claims for:

1) Violation of § 10(b) of the Exchange Act and Rule 10b-5,

2)  Violation of § 20(a) of the Exchange Act,

3)  Violations of the Georgia RICO Act (under O.C.G.A. § 16-14-4(a) and (b)), and

4)  Violations of the Georgia RICO Act – conspiracy (under O.C.G.A. § 16-14-4(c)).

(Fir Tree Action Doc. 1 at 122-140).

## II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. "Accordingly, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Ridgeline Cap. Partners, LLC v. MidCap Fin. Servs., LLC*, 340 F. Supp. 3d 1364, 1367 (N.D. Ga. 2018) (citing *Iqbal*, 556 U.S. at 679).

Ordinarily, the evidence the Court considers on a motion to dismiss should be limited to the four corners of the complaint because otherwise the motion would be converted to a motion for summary judgment. *See* 5C Charles Allen

Wright et al., *Federal Practice and Procedure* § 1366 (3d ed. 1998) (noting that "whenever outside matters are presented to and not excluded by the court, the matter will be considered by the appellate court as one for summary judgment"). But the Eleventh Circuit has recognized an exception to this general rule when "the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). In such circumstances, "the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal," meaning that "the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Id.* This exception applies when the materials cited are both (1) "central to the plaintiff's claim" and (2) "undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

### III.   Discussion

#### A. Timeliness

"'A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred' because '[a] statute of limitations bar is an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint.'" *Lindley v. City of Birmingham*, 515 F. App'x 813, 815 (11th Cir. 2013) (quoting *La Grasta v.*

*First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). "At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005), *abrogation on other grounds recognized by Walter v. Avellino*, 564 F. App'x 464, 466 (11th Cir. 2014); *see also Fulton Cnty. v. Wells Fargo & Co.*, No. 1:21-CV-1800-MLB, 2022 WL 846903, at *4 (N.D. Ga. Mar. 22, 2022) (citing *Tello's* motion to dismiss standard). With this standard in mind, the Court considers the timeliness of Maverick's Section 18 and GUSA claims.

### 1.  Timeliness of Section 18 Claim

A Section 18 claim must be brought within one year "after the discovery of the facts constituting the cause of action and within three years after such cause of action occurred." 15 U.S.C. § 78r(c). Defendants contend that this claim is untimely because the statute of limitations began to run on October 26, 2018, or, at the latest, by January 3, 2020 (when the initial Class Action complaint was filed), and Maverick's Complaint was not filed until June 22, 2021, more than one year later. (Doc. 36-1 at 7-8).

Plaintiffs respond that their Section 18 claim is timely for several reasons. First, Plaintiffs argue that the extended two-year statute of limitations and five-year statute of repose available under the Sarbanes-Oxley Act applies to this claim.

7

(Doc. 42 at 8). Second, Plaintiffs state that under the standard set out by the Supreme Court in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), the statute of limitations period did not start to run until June 21, 2020, when the Class Action plaintiff filed its amended complaint, and this Complaint was filed within a year after that date. (Doc. 42 at 8-13). Third, Plaintiffs contend that a cause of action does not "accrue" until a plaintiff suffers damages, and Plaintiffs' damage did not occur until July 25, 2018, within the three-year statute of repose. (Doc. 42 at 14-15). Fourth, Plaintiffs argue that even if the claim was untimely, *American Pipe* tolling or other equitable tolling doctrines should apply here. (Doc. 42 at 16-18).

### a.  Applicability of Sarbanes-Oxley Act to Section 18 Claims

Although the Sarbanes-Oxley Act extended the statute of limitations to two years for securities claims involving scienter, neither the Supreme Court nor the Eleventh Circuit have definitively weighed in as to whether a Section 18 claim falls under the extended statute of limitations. Under the Sarbanes-Oxley Act, "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of [] 2 years after the discovery of the facts constituting the violation or [] 5 years after such violation." 28 U.S.C. § 1658(b).

"Under section 18, a plaintiff must only plead and prove that the defendant made or caused to be made a material misstatement or omission in a document filed with the Securities Exchange Commission and that the plaintiff relied on the misstatement or omission." *Magna Inv. Corp. v. John Does One Through Two Hundred*, 931 F.2d 38, 39 (11th Cir. 1991) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 211 n.31 (1976*); Ross v. A.H. Robins Co.*, 607 F.2d 545, 556 (2d Cir. 1979); R. Jennings and H. Marsh, *Securities Regulation* 882–884 (6th ed. 1987)). "Section 18 accords a defendant the defense that he acted in "good faith and had no knowledge that such statement was false or misleading." *Id.* at 39-40.

The Supreme Court has previously stated that Section 18 "involve[s] defendants who have violated the securities law with scienter." *Musick, Peeler & Garrett v. Emps. Ins. of Wausau*, 508 U.S. 286 (1993) (discussed in *Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 406 (2d Cir. 2016), *as amended* (Apr. 29, 2016)). In *Dekalb*, the Second Circuit agreed with the Fifth Circuit that the extended statute of limitations should apply to claims under Section 18. 817 F.3d at 407 (citing *Blaz v. Belfer*, 368 F.3d 501, 503 (5th Cir. 2004)). The Court finds these circuit decisions persuasive. Accordingly, the Court finds that 28 U.S.C. § 1658(b)

is applicable to Maverick's Section 18 claim, meaning that it is subject to a two-year statute of limitations and five-year statute of repose.[2]

### b. The *Merck* Standard

Under *Merck*, "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered the facts constituting the violation, including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." 559 U.S. at 653. The Eleventh Circuit has interpreted *Merck*, stating, "even if [plaintiff] did not in fact discover the information necessary to plead each element of a proper complaint, as long as a reasonably diligent plaintiff would have had sufficient information to adequately plead an effective complaint more than two years prior to when this action was commenced, [plaintiff's] claim would still be time barred." *100079 Can., Inc. v. Stiefel Lab'ys, Inc.*, 596 F. App'x 744, 748 (11th Cir. 2014).

With this in mind, the Court finds that Plaintiffs "would have had sufficient information to adequately plead an effective complaint" as of January 3, 2020, when the initial Class Action Complaint was filed; thus, the statute of limitations for the Section 18 claim began to run on that date. *Accord GunUp, Inc. v. Urvan*, No. 1:20-CV-02340-LMM, 2021 WL 2547662, at *8 (N.D. Ga. Feb. 24, 2021) (finding,

---

[2] Claims under Section 10(b), Rule 10b-5, and Section 20(a) are subject to the same statute of limitations. Therefore, Mr. Carson's argument that Plaintiffs' 10(b), Rule 10b-5, and 20(a) claims are untimely as to him is incorrect. (Doc. 38-1 at 12).

under the same standard, that the statute of limitations for state law securities claim began to run at the time an initial complaint was filed). Accordingly, Maverick's Section 18 claim is not time-barred because it was brought within the two-year statute of limitations period.

### 2.  Timeliness of GUSA Claim

Plaintiffs' GUSA claim arises under O.C.G.A. § 10-5-50 (Doc. 1 at ¶ 364), which Plaintiffs correctly point out falls within the purview of O.C.G.A. § 10-5-58(j)(2): "A person may not obtain relief under subsection (b) of this Code section . . . [o]ther than for a violation of Code Section 10-5-20 . . . unless the action is instituted within the earlier of two years after discovery of the facts constituting the violation or five years after the violation occurred." Notably, O.C.G.A. § 10-5-58(j)(2) uses the same relevant language as 28 U.S.C. § 1658, "discovery of the facts constituting the violation." Another district court has previously applied the same discovery standard in *Merck* to a claim under O.C.G.A. § 10-5-58(j)(2).[3] *See GunUp*, 2021 WL 2547662, at *8. The same treatment is appropriate here. Therefore, as with the Section 18 claim, the statute of limitations began to run on January 3, 2020. Maverick's GUSA claim was timely filed within the two-year statute of limitations.

---

[3] While the substantive claim at issue in that case arose under the Washington State Securities Act, the district court found that the standard in O.C.G.A. § 10-5-58(j)(2) was applicable under conflict-of-laws rules. *GunUp*, 2021 WL 2547662, at *6, n.9.

**B.  Section 10(b)(5) and Rule 10b-5 Claim**

As the Class Action MTD Order described:

> "Section 10(b) of the Securities Exchange Act of 1934 and
> the Securities and Exchange Commission's Rule 10b–5
> prohibit making any material misstatement or omission
> in connection with the purchase or sale of any security."
> *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267
> (2014). As explained by the Eleventh Circuit:

Section 10(b) makes it unlawful to

> use or employ, in connection with the purchase or
> sale of any security registered on a national
> securities exchange . . . . any manipulative or
> deceptive device or contrivance in contravention
> of such rules and regulations as the Commission
> may prescribe as necessary or appropriate in the
> public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5, in turn, forbids

> any person, directly or indirectly, . . .
>
> (a) To employ any device, scheme, or artifice to
> defraud,
>
> (b) To make any untrue statement of a material fact
> or to omit to state a material fact necessary in order
> to make the statements made, in the light of the
> circumstances under which they were made, not
> misleading, or
>
> (c) To engage in any act, practice, or course of
> business which operates or would operate as a
> fraud or deceit upon any person,
>
> in connection with the purchase or sale of any
> security.

17 C.F.R. § 240.10b–5.

> *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236 (11th
> Cir. 2008). Thus, to state a claim pursuant to Section 10(b)
> and Rule 10b–5, a plaintiff must sufficiently allege six (6)
> elements:
>
>> (1) a material misrepresentation or omission; (2)
>> made with scienter; (3) a connection with the
>> purchase or sale of a security; (4) reliance on the
>> misstatement or omission; (5) economic loss [i.e.,
>> damages]; and (6) a causal connection between the
>> material misrepresentation or omission and the
>> loss, commonly called "loss causation."
>
> *See FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282,
> 1295 (11th Cir. 2011) (internal quotation omitted).

(Class Action Doc. 60 at 11-12). The standard for pleading a Section 10(b) or Rule

10b-5 claim has been referred to by the Eleventh Circuit as the "triple-layered

pleading standard," because it requires satisfaction of three pleading

requirements:

> To survive a motion to dismiss, a securities-fraud claim
> brought under Rule 10b–5 must satisfy not only the run-
> of-the-mill federal notice-pleading requirements, *see*
> Federal Rule of Civil Procedure 8(a)(2), but also the
> heightened pleading standards found in Federal Rule of
> Civil Procedure 9(b) and the special fraud pleading
> requirements imposed by the Private Securities
> Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 [the
> "PSLRA"]. Failure to meet any of the three standards will
> result in a complaint's dismissal. *See Corsello v. Lincare,
> Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

*Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317–18 (11th Cir. 2019).[4]

---

[4] The Court incorporates by reference the Class Action MTD Order's discussion of
each standard. (Class Action Doc. 60 at 13-14).

### 1.  Loss Causation

Defendants allege that Maverick has not adequately pleaded loss causation.

(Doc. 36-1 at 20-28; Doc. 35-1 at 17, Doc. 38-1 at 20). As stated in the Class Action

MTD Order,

> "Loss causation pleading need only satisfy Rule 8 standards, not the heightened standards of Rule 9 or the PSLRA." (citing *In re Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325, 1347 (N.D. Ga. 2012) (citing *In re Coca-Cola Enterprises Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1203-04 (N.D. Ga. 2007)). "Rule 8 is satisfied if plaintiff provides a short and plain statement adequate to give defendants some indication of the loss and the causal connection that the plaintiff has in mind." *Id*. A plaintiff "need not show that the defendant's fraud was the 'sole and exclusive cause' of the injury." *See id*. (quoting *FindWhat*, 658 F.3d at 1309). Rather, a plaintiff need "only show that the defendant's act was a substantial or significant contributing cause." *See id*. Put differently, "a plaintiff must offer proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." *See Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997) ("plaintiff must show that the misrepresentation touches upon the reasons for the investment's decline in value").
>
> A plaintiff often alleges loss causation "by asserting that a defendant's corrective disclosure revealed that a prior statement was false and that the revelation caused the stock price to drop." *In re Flowers Foods, Inc. Sec. Litig.*, 7:16-CV-222 (WLS), 2018 WL 1558558, at *18 (M.D. Ga. Mar. 23, 2018). "To be corrective, [a] disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company." *Meyer*, 710 F.3d at 1197.

(Class Action Doc. 60 at 50-51). A corrective disclosure "can be established by a single disclosure or a series of partial disclosures." *Luczak v. Nat'l Beverage Corp.*, 812 F. App'x 915, 921 (11th Cir. 2020) (citing *Meyer*, 710 F.3d at 1197).

In the Class Action MTD Order, the Court found that the plaintiff had sufficiently pleaded loss causation through a series of partial corrective disclosures. (Class Action Doc. 60 at 49-56). In this case, the alleged corrective disclosures that occurred during the time Maverick held Mohawk stock were on July 25 and 26, 2018. Maverick pleads that the corrective disclosures relevant to the claims here include:

- In Mohawk's July 25, 2018 press release, Mohawk "announced 2018 second quarter net earnings of $197 million and diluted earnings per share (EPS) of $2.62. Adjusted net earnings were $263 million and EPS was $3.51, excluding restructuring, acquisition and other charges, a 6% decrease from last year." (Doc. 1 ¶ 132).

- Also in the July 25, 2018 press release: "Commenting on Mohawk Industries' second quarter performance, Jeffrey S. Lorberbaum, Chairman and CEO, stated, 'Our results fell short of our expectations, and we are taking actions to improve the performance of our U.S. businesses,'" and further, "Our businesses outside North America

showed significant improvement" and "the results in most of our non-U.S. businesses improved substantially." (Doc. 1 ¶¶ 133-134).

(Doc. 42 at 19-23). Then, on Mohawk's investor call the next day, Maverick alleges the following disclosures occurred:

- "Defendant Lorberbaum again acknowledged the Company missed financial targets because of problems in the North America Flooring Division run by Defendant Carson: 'Our second quarter results fell short of our expectations and we are taking actions to improve the performance of our U.S. businesses.'" (Doc. 1 ¶ 137).

- "The Company admitted it had to sell down impaired product from the Flooring North America division's inventories during the period: 'For the second quarter, we accelerated sales of impaired Mohawk inventory. . . .'" (*Id.*).

- "Defendants admitted inventories were high in the Flooring North America division and had to be reduced: 'we produced less than we sold to reduce inventory.'" (*Id.*).

(Doc. 42 at 19-23). Maverick further alleges that news outlets, including CNBC and *The Motley Fool* reported on the drop in share value after the press release. (Doc. 1 ¶¶ 135-36). By the end of trading on July 26, 2018, Mohawk's share price had dropped by $38.06 per share. (Doc. 1 ¶ 139).

16

According to the Complaint, these disclosures were in contrast to those in 2017 and early 2018:

- In October 2017, "Defendants told investors of Mohawk's LVT products: 'With their superior design and performance, our flexible, rigid and commercial LVT collections are being well accepted across all channels of the market.' According to Defendants, Mohawk was 'in the best position by having the lowest cost and largest capacity in the U.S.' to meet the growing LVT market." (Doc. 1 ¶¶ 59-60).

- "By February 2018, at which time Plaintiffs were already purchasing Mohawk shares, Defendants were boasting: 'We began 2017 with Mohawk in the best position in its history and concluded the year even stronger.'" (Doc. 1 ¶ 61).

The Court finds that Mohawk's July 2018 statements regarding Mohawk's reduction of inventory and "impaired inventory" constitute a corrective disclosure sufficient to establish loss causation. In particular, the mention of "impaired" inventory, in the Court's view, represents "something previously hidden or actively concealed." *See Meyer*, 710 F.3d at 1201, n.13.

### a. Previous Statement

Defendants Mohawk and Mr. Lorberbaum argue that the Court previously addressed the portion of Mohawk's statement (in Maverick's Complaint at

paragraph 60) and found it to be non-actionable corporate puffery. (Class Action Doc. 60 at 38). The Court agrees. Therefore, this portion of Mohawk and Mr. Lorberbaum's Motion to Dismiss is granted.

### 2. Material Misrepresentation or Omission

The Court previously found substantially similar allegations in the Class Action Complaint to be sufficient to show material misrepresentations or omissions by Mohawk and Mr. Lorberbaum. (Class Action Doc. 60 at 18-41). Mohawk and Mr. Lorberbaum do not challenge this element here, and the Court finds it has been met.

Defendants Boykin and Carson, however, argue that Plaintiffs have not pleaded that they made material misrepresentations or omissions sufficient to state a claim against them. (Doc. 35-1 at 10; Doc. 38-1 at 14). The Court first summarizes the specific allegations about Mr. Boykin and Mr. Carson in the Complaint, and then considers whether Plaintiffs have sufficiently pleaded material misrepresentations or omissions as to each.

### a. Mr. Boykin

Plaintiffs plead, "Defendant Frank H. Boykin [] was Mohawk's Chief Financial Officer from January 2005 through April 2019. Defendant Boykin signed and certified the purported accuracy of Mohawk's quarterly and annual SEC filings throughout the relevant period. Further, throughout the period in which

Plaintiffs researched their investment in Mohawk, Boykin regularly spoke to investors and securities analysts regarding Mohawk, the Company's products, and its financial results." (Doc. 1 ¶ 29).

Plaintiffs also point to specific misstatements by Mr. Boykin during an April 28, 2017 conference call and a February 9, 2018 conference call, respectively, which they allege attributed higher inventories to "positive" or "benign" causes. On the April 28, 2017 call, Boykin stated, "Inventories were $1.741 billion with inventory days at 110 compared to 107 days last year impacted by geographic expansion and product growth." (Doc. 1 ¶ 187). On the February 9, 2018 call, he stated, "Our inventories were $1.949 billion with inventories at 119 days. Inventories have been impacted by higher raw material cost, ramp up of new products and backwards integration. We anticipate lowering our inventory next year." (Doc. 1 ¶ 232). But, according to Plaintiffs, "In truth, the rise in inventories was attributable to the Company storing millions of square feet of carpet and LVT in inventory that was unsaleable and/or there was no customer demand for, and which should have been written down in value but was not. *See* § V.E." (Doc. 1 ¶ 187). In addition, Plaintiffs state, "Mohawk's C-level senior executives (including CEO Lorberbaum and CFO Boykin) received regular reports of sales activities showing spikes in sales on the last day of each quarter." (Doc. 1 ¶ 307).

The Court previously found Mr. Boykin's statements about Mohawk's inventory on the April 28, 2017 and February 9, 2018 conference calls to have met the pleading standard for material misrepresentations, and finds the same here. (Class Action Doc. 60 at 21 (quoting Class Action Am. Comp. ¶¶ 100, 261)).

### b. Mr. Carson

As to Mr. Carson, Plaintiffs allege, in relevant part:

> Defendant Brian Carson [] was Mohawk's President of Flooring North America from July 2011 until he was fired on November 12, 2018. As Carson has publicly stated, including on his personal LinkedIn profile, he had "Full P&L [profit and loss] ownership" over Mohawk's entire North American business in his role as President of Flooring North America. He oversaw all of Mohawk's 42 plants and 41 distribution centers in North America. Carson managed the Flooring North America segment of Mohawk (Mohawk's largest division) and was a member of Mohawk's world-wide leadership team. Mohawk described Carson in its public filings with the SEC as "an 'executive employee' and a 'key employee,' as those terms are defined in O.C.G.A. 13-8-51," and that he "managed the Flooring North America Business Unit of Mohawk, while also participating on Mohawk's world-wide leadership team."

(Doc. 1 ¶ 30).

> Carson personally orchestrated and caused the Flooring North America segment of Mohawk to (i) not disclose problems with the Company's production of LVT, ii) manipulate its inventory levels by producing and holding excess and defective LVT and carpeting, without writing down the value of that LVT and carpet as required, and (iii) to pull into the present quarter sales that otherwise were scheduled for future periods,

> including through the Saturday Scheme (as defined *infra* at ¶117).

(*Id*).

> Defendant Carson, as the President of the North America Flooring segment, was responsible for and did in fact furnish false and misleading information to the Company concerning the North America Flooring segment for inclusion in public press releases, SEC filings, analyst conference calls and other disclosures to investors, which information was reported to investors (including Plaintiffs) and, foreseeably, relied upon by those investors in making investment decisions to their detriment."

(*Id*).

Mr. Carson points out that Plaintiffs do not plead that Mr. Carson had "ultimate authority" over any of the public statements made that were allegedly false or misleading as required to state a claim under the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). In particular, under the holdings in *Janus* and *Lorenzo v. Securities and Exchange Commission*, 139 S. Ct. 1094 (2019), he argues that he was not the "maker" or "disseminator" of a statement in violation of Rule 10b-5(b), and even if he "participat[ed] in the drafting of a false statement," that conduct is not sufficient to state a claim under Rule 10b-5(b). *See Lorenzo*, 139 S. Ct. at 1100.

Plaintiffs respond by arguing that Mr. Carson, "as the head of the Flooring North America division[,] possessed the power and authority to control the

contents of Mohawk's public statements, particularly as they concerned the Flooring North America division, and had the authority to prevent any such false and misleading statements from being issued or cause them to be corrected." (Doc. 43 at 21).

In the alternative, Plaintiffs contend that they have stated a claim against Mr. Carson for "scheme liability" under Rule 10b-5(a), which does not require a false or misleading statement, instead of Rule 10b-5(b). (Doc. 43 at 17-22). "Scheme liability claims . . . require a showing of conduct that can be fairly viewed as manipulative or deceptive within the meaning of the statute." *Halbert v. Credit Suisse AG*, 402 F. Supp. 3d 1288, 1306 (N.D. Ala. 2019) (quoting *Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 608 (5th Cir. 1979); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 473-74 (1977)). "In other words, plaintiffs must allege 'intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.'" *Id.* (quoting *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1273 (11th Cir. 2016); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976)); *see also IBEW Loc. 595 Pension & Money Purchase Pension Plans v. ADT Corp.*, 660 F. App'x 850, 858 (11th Cir. 2016) (describing a scheme liability claim).

The Court finds that Plaintiffs have failed to sufficiently allege a Rule 10b-5(b) claim against Mr. Carson, which requires a material misstatement or omission,

but have sufficiently stated a Rule 10b-5(a) "scheme liability" claim against him. Plaintiffs allege that Mr. Carson oversaw all of Mohawk's North American plants and distribution centers, and that "[a]ll of the deceptive practices to manipulate Mohawk's reported financial results as described herein – (i) pulling in forward sales and the Saturday Scheme, (ii) concealment of defective LVT, and (iii) inventory manipulation – were concentrated in Mohawk's Flooring North America Segment, under the direction of Defendant Carson." (Doc. 1 ¶ 274). At this stage, these allegations suffice.

### 3. Scienter

As the Eleventh Circuit has found and as noted in the Class Action MTD Order, the PSLRA "raised the standard for pleading scienter." *Mizzaro*, 544 F.3d at 1238; (*see also* Class Action Doc. 60 at 41-43). "Specifically, in any securities fraud class action in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Mizzaro*, 544 F.3d at 1238 (quoting 15 U.S.C. § 78u–4(b)(2)). The Complaint must plead facts "supporting a strong inference of scienter 'for each defendant with respect to each violation.'" *Id.* (quoting *Phillips v. Scientific–Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004)). To sufficiently plead

scienter, a plaintiff must "plead 'with particularity facts giving rise to a strong inference' that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." *Id.* "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Id.* (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n.18 (11th Cir. 1999)).

The Court previously found substantially similar allegations in the Class Action Complaint to be sufficient to plead scienter under the PSLRA standard as to Mohawk and Mr. Lorberbaum. (Class Action Doc. 60 at 41-49). Mohawk and Mr. Lorberbaum do not challenge this element here, and the Court finds it has been met. Having found Mr. Boykin made some material misrepresentations and omissions, the Court now considers whether Plaintiffs have sufficiently plead that those were made with scienter. As to Mr. Carson, the Court considers scienter as to the scheme liability allegations.

### a. Mr. Boykin

Defendant Boykin argues that Plaintiffs have failed to meet the scienter requirement as to any statements made by him. (Doc. 35-1 at 4-9).

In *Ebix*, the district court considered whether the scienter pleading standard was met with regard to allegedly false and misleading statements by a CEO and CFO about the company's internal controls (including GAAP accounting), foreign tax strategy, and organic growth rate over a period of approximately two years. 898 F. Supp. 2d at 1325, 1329-1338. There, the Court found that "[w]ith regard to Individual Defendants, their roles within the company (CEO and CFO), their active participation in press releases, earnings calls, and SEC filings dealing with the issues focused on in the [Complaint], and the nature, duration and extent of the fraud alleged, would lead a reasonable person to conclude that they knew about the fraud or were at least severely reckless in not knowing about it." *Id*. at 1346-47.

In contrast, in *Mizzaro*, the Eleventh Circuit found that despite the complaint pleading "widespread fraud" with regard to merchandise chargebacks to suppliers in Home Depot's retail stores, it did not present sufficient allegations that members of senior management had knowledge of the alleged fraud. 544 F.3d at 1250-51. The Court found that the alleged scheme raised was not so large as to be central to Home Depot's business, and did not raise accounting issues such that

it was more likely that not that members of senior management were aware of it or severely reckless in not knowing about it. *Id.* at 1251-54.

Here, Plaintiffs contend that Mr. Boykin must have been aware of the issues with Mohawk's LVT inventory for various reasons, including that in 2016, after concerns raised by Mohawk's auditor about its internal controls related to inventory, Mohawk's CEO and CFO found that those internal controls were insufficient and had established policies that require specific monitoring of its inventory levels by senior management. (Doc. 1 ¶¶ 175-77; 298). Weekly inventory level reports were in fact created and provided to senior management. (Doc. 1 ¶ 303). In addition, Plaintiffs allege that defective LVT was installed in Mohawk's corporate headquarters where each of the Individual Defendants worked (Doc. 1 ¶ 286), and Mohawk's LVT inventory grew from 36 million square feet to 90 million square feet and required the company to lease significant additional storage space for it. (Doc. 1 ¶ 282). These allegations, combined with Mr. Boykin's role within the company as CFO and his statements in Mohawk's SEC filings and investor conference calls, are sufficient to create a strong inference of scienter as to Mr. Boykin with regard to the LVT defects and inventory issues.

However, the allegation that Mr. Lorberbaum and Mr. Boykin "received regular reports of sales activities showing spikes in sales on the last day of each

quarter" does not support a strong inference of scienter as to Mr. Boykin with regard to improper revenue recognition. (Doc. 1 ¶ 307).

### b.  Mr. Carson[5]

Because the Court previously found that Plaintiffs have not sufficiently alleged that Mr. Carson made any material misstatement or omissions, but that they have sufficiently alleged his role in "scheme liability," the Court details the scienter allegations in consideration of their scheme liability claim. Plaintiffs plead that as early as January 2017, Mr. Carson had stated that he was getting reports from the field that "the dogs don't like the dog food we're making," seemingly a reference to Mohawk's product being inferior or defective. (Doc. 1 ¶ 73). One former employee indicated that he "personally told" Mr. Carson in 2017 that Mohawk's U.S. LVT plant was producing defective product and that Mohawk should instead import LVT. (Doc. 1 ¶ 281). Further, they indicate that overproduction of LVT and carpet, and Mohawk's refusal to write down scrap product, occurred in the Flooring North America division under Mr. Carson's direction. (Doc. 1 ¶¶ 100-103). According to a confidential witness, "Carson was well aware of the routine practice of pulling in sales . . . Carson was present when

---

[5] The Court also notes that although Mr. Carson was not named as a defendant in the Class Action, the Class Action MTD Order found that the plaintiff had sufficiently alleged scienter as to Mr. Carson which could be imputed to Mohawk. (*See* Class Action Doc. 60 at 44-46).

the plan to ship product early was discussed weekly in staff meetings," referred to as the "Saturday Scheme" in the Complaint. (Doc. 1 ¶ 113). "All of the deceptive practices to manipulate Mohawk's reported financial results" were concentrated in the Flooring North America segment, which was under the direction of Mr. Carson. (Doc. 1 ¶ 274). These allegations are sufficient to meet the required "strong inference" of scienter. Plaintiffs have therefore met the scienter pleading standard as to Mr. Carson and the Court need not address Mr. Carson's other arguments.

### C. Section 18

"Under section 18, a plaintiff must only plead and prove that the defendant made or caused to be made a material misstatement or omission in a document filed with the Securities Exchange Commission and that the plaintiff relied on the misstatement or omission." *Magna Inv. Corp. v. John Does One Through Two Hundred*, 931 F.2d 38, 39 (11th Cir. 1991). Mohawk and Mr. Lorberbaum argue that Plaintiffs have not pleaded a Section 18 claim because they have not sufficiently pleaded actual reliance on "specific statements" that were false or misleading. (Doc. 36-1 at 28-29). Mr. Boykin adopts these arguments. (Doc. 35-1 at 17).

The Court disagrees. Paragraphs 162-270 of the Complaint explicitly detail the specific statements that Plaintiffs contend they relied upon in making their purchasing decisions. And paragraphs 154-158 discuss their actual reliance on those statements. Accordingly, Plaintiffs have stated a claim under Section 18

against Mohawk, Mr. Lorberbaum, and Mr. Boykin. However, for the reasons stated previously, Plaintiffs have not stated a Section 18 claim against Mr. Carson.

### D. Section 20(a) Claim Against Individual Defendants

"A § 20(a) claim, which imposes derivative securities-fraud liability on certain company individuals, has three elements: (1) a primary violation of the securities laws . . . ; (2) individual defendants who had the power to control the general business affairs of the company; and (3) individual defendants who 'had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability.'" *Carvelli*, 934 F.3d at 1330 (quoting *Mizzaro*, 544 F.3d at 1237; 15 U.S.C. § 78t(a)).

In the Class Action MTD Order, the Court found that plaintiff had sufficiently pleaded a Section 20(a) claim against Mr. Lorberbaum. (Class Action Doc. 60 at 56-57). Here, because Plaintiffs have adequately pleaded an underlying primary violation under the Exchange Act, and because the criteria for a Section 20(a) claim are met as to Mr. Lorberbaum, they have also adequately pleaded a violation of Section 20(a) as to Mr. Lorberbaum.

As to Mr. Boykin, because the Court finds adequate allegations of a primary violation, and because (as previously found) Mr. Boykin, as CFO, had the ability to control or influence Mohawk's internal controls with regard to inventory as well

as its revenue recognition, Plaintiffs have sufficiently alleged a Section 20(a) violation as to Mr. Boykin.

Turning to Mr. Carson, he contends that Plaintiffs have failed to allege that he "had the power to control the general affairs of the primary violator" or "had the power to control the specific corporate policy that resulted in the primary violation." (Doc. 38-1 at 29). The Court disagrees with this contention for the reasons set forth in the previous section of this Order discussing the sufficiency of Plaintiffs' allegations regarding Mr. Carson's scheme liability and scienter under Section 10(b) and Rule 10b-5(a).

### E.  Georgia Claims

#### 1.  Fraud

Under Georgia law, "[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 563 n.10 (Ga. 2020) (quoting *Crawford v. Williams*, 375 S.E.2d 223 (Ga. 1989)). Material omissions can also be the basis for a fraud claim "if they are intended to create a fraudulent representation." *Beck v. Prupis*, 162 F.3d 1090, 1096 (11th Cir. 1998) (citing *United States v. O'Malley*, 707 F.2d 1240, 1247 (11th Cir. 1983), *aff'd*, 529 U.S. 494 (2000)). When a plaintiff alleges fraud in federal court, Federal Rule of Civil Procedure 9(b) requires that "[i]n

alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This Rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)).

"The elements of common law fraud and negligent misrepresentation under Georgia law are essentially the same as the elements of a 10b–5 claim, except for the level of scienter required to prove negligent misrepresentation." *Damian v. Montgomery Cnty. Bankshares, Inc.*, 255 F. Supp. 3d 1265, 1284 (N.D. Ga. 2015) (citing *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 758 n.25 (11th Cir. 1984); *Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1360 (N.D. Ga. 2000)). Notably, a plaintiff "is not required to allege scienter with the level of particularity required by the PSLRA" to proceed on state law claims, but need only meet the Rule 9(b) standard. *Id*. The pleading standard under Rule 9(b) for a fraud claim may be satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*Brooks*, 116 F.3d at 1371. The Georgia Supreme Court has held that to plead a common law fraud claim (and a negligent misrepresentation claim), unlike a federal securities fraud claim, requires a showing of actual reliance. *Holmes v. Grubman*, 691 S.E.2d 196, 200 (Ga. 2010); *see also TSG Water Res., Inc. v. D'Alba & Donovan Certified Pub. Accts., P.C.*, 260 F. App'x 191, 201 (11th Cir. 2007) (citing *White v. BDO Seidman, LLP*, 549 S.E.2d 490, 493 (Ga. Ct. App. 2001)) ("we cannot agree that Georgia law permits such indirect reliance to substitute for proof of actual reliance in a negligent misrepresentation case."). The Court finds here that plaintiffs have adequately pleaded actual reliance. (*See* Doc. 1 ¶¶ 154-158).

For the reasons discussed in the Section 10(b) and Rule 10b-5 section of this Order, The Court finds that Plaintiffs have stated a common law fraud claim against Mohawk, Mr. Lorberbaum, and Mr. Boykin, but not Mr. Carson, because they cannot show statements made by Mr. Carson or Plaintiffs' reliance thereupon.

## 2. Negligent Misrepresentation

"[T]o state a claim for negligent misrepresentation, the plaintiff must allege facts showing that (1) the defendant negligently provided false information to

foreseeable persons, known or unknown, including the plaintiff; (2) the plaintiff reasonably relied on this false information; and (3) the plaintiff's reliance proximately caused an economic injury." *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1339 (N.D. Ga. 2021) (quoting *C & C Fam. Tr. 04/04/05 ex rel. Cox-Ott v. AXA Equitable Life Ins. Co.*, 44 F. Supp. 3d 1247, 1253 n.4 (N.D. Ga. 2014)). At bottom, "[l]iability for . . . negligent [mis]representation attaches when a defendant makes a false representation upon which the plaintiff relies." *Bowden v. Med. Ctr., Inc.*, 845 S.E.2d 555, 564 n.11 (Ga. 2020) (quoting *Glob. Payments, Inc. v. InComm Fin. Servs., Inc.*, 843 S.E.2d 821, 824 (Ga. 2020)).

"[T]he only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." *Id*. (quoting *Holmes v. Grubman*, 691 S.E.2d 196 (Ga. 2010)). "However, the heightened pleading standards of Rule 9(b) do not apply to claims of negligent misrepresentation." *Shea,* 533 F. Supp. 3d at 1339–40 (quoting *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1177 (N.D. Ga. 2019)).

The Court finds that under the Rule 8(a) pleading standard, Plaintiffs have sufficiently alleged a claim for negligent misrepresentation under Georgia law against Mohawk, Mr. Lorberbaum, and Mr. Boykin for the reasons discussed in the Section 10(b) and Rule 10b-5 and fraud sections of this Order. Plaintiffs have not stated such a claim against Mr. Carson.

### 3.  GUSA (O.C.G.A. § 10-5-50)

Under O.C.G.A. § 10-5-50,

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
>
>> (1) To employ a device, scheme, or artifice to defraud;
>>
>> (2) To make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it is made, not misleading; or
>>
>> (3) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

This statute "requires a showing of intent to defraud." *Beranger v. Harris*, No. 1:18-CV-5054-CAP, 2021 WL 4254940, at *3 (N.D. Ga. Feb. 12, 2021) (quoting *Sims v. Nat. Prods. of Ga., LLC*, 785 S.E.2d 659, 663 (Ga. Ct. App. 2016)); *see also GunBroker.com, LLC v. Tenor Cap. Partners, LLC*, No. 1:20-CV-613-TWT, 2022 WL 103719, at *3 (N.D. Ga. Jan. 11, 2022). In *Beranger*, the Court noted that "Rule 10b-5 . . . [uses] language almost identical to the language in O.C.G.A. § 10-5-50. In *Keogler*, [] the Georgia Court of Appeals determined that the elements of securities fraud under the Georgia statute and the federal statute were similar." *Id*. at *4 n.4 (citing *Keogler v. Krasnoff*, 601 S.E. 2d 788, 792 (Ga. Ct. App. 2004)).

For the reasons discussed in the Section 10(b) and Rule 10b-5 portion of this Order, the Court finds that Plaintiffs have stated a GUSA claim under O.C.G.A.

§ 10-5-50(b) against Mohawk, Mr. Lorberbaum, and Mr. Boykin. They have further

stated a GUSA claim against Mr. Carson under O.C.G.A. § 10-5-50(a).

### 4. Georgia RICO (O.C.G.A. § 16-14-4(a) and (b))

O.C.G.A. § 16-14-4 provides:

> (a) It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

> (b) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

"Racketeering activity" is defined, in relevant part, "to commit, to attempt to

commit, or to solicit, coerce, or intimidate another person to commit any crime

which is chargeable by indictment under the laws of this state involving . . . [t]he

Georgia Uniform Securities Act [] in violation of Chapter 5 of Title 10," "any act or

threat . . . dealing in securities which is chargeable under the laws of the United

States . . . and which is punishable by imprisonment for more than one year," or

"any conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961(1)."

O.C.G.A. § 16-14-3(5). "Pattern of racketeering activity" means:

> (A) Engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing

> characteristics and are not isolated incidents, . . . and that
> the last of such acts occurred within four years, excluding
> any periods of imprisonment, after the commission of a
> prior act of racketeering activity.

O.C.G.A. § 16-14-3(4). Maverick alleges that Mohawk is an "enterprise" under the statute, or in the alternative that the Individual Defendants are an "enterprise."[6] According to Plaintiff, "Lorberbaum, Boykin, and Carson are persons who, through a pattern of racketeering activity, acquired and maintained, directly or indirectly, an interest in or control of personal property including monies paid by Plaintiffs for their investments in Mohawk." (Doc. 1 ¶ 375). "Such pattern of racketeering activity included at least two acts of 'racketeering activity,' including mail and wire fraud" as defined in the statute. (*Id*.).

Plaintiffs further contend that "[u]pon information and belief, Defendants engaged in the racketeering act of theft by taking and theft by deception within the meaning of O.C.G.A. § 16-8-2 and O.C.G.A. § 16-8-3. In particular, as described elsewhere herein, Defendants unlawfully took and misappropriated certain funds and other property belonging to Maverick, including monies paid by Plaintiffs for

---

[6] The Eleventh Circuit has acknowledged that Georgia law recognizes a RICO claim against a corporation. *See Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1293 (11th Cir. 2006), *abrogated on other grounds by Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 709 (11th Cir. 2014) ("a corporation[] may be sued under the Georgia RICO statute"). Further, a RICO enterprise "may consist of a corporation and its agents or employees." *Duvall v. Cronic*, 820 S.E.2d 780, 790 (Ga. Ct. App. 2018) (quoting *Reaugh v. Inner Harbour Hosp.*, 447 S.E.2d 617 (Ga. Ct. App. 1994)).

their investments in Mohawk, with the intention of depriving Maverick of the same." (Doc. 1 ¶ 384). However, in response to Mohawk and Lorberbaum's Motion to Dismiss, Plaintiffs indicate that the Court "need not reach this issue" because the alleged violations of the GUSA and mail and wire fraud are sufficient to meet the pleading standard. (Doc. 42 at 29, n.3).

"The Eleventh Circuit has advised that the particularity requirement for fraud under Rule 9(b) applies to fraud-based state RICO claims brought in a federal court." *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1335 n.8 (N.D. Ga. 2021) (quoting *Fortson v. Best Rate Funding, Corp.*, No. 1:13-CV-4102-CC, 2014 WL 11456286, at *6 (N.D. Ga. Sept. 2, 2014)). Notably, "[a] plaintiff's status as a creditor or stockholder . . . does not preclude standing for RICO violations if the plaintiff has alleged an injury proximately caused by the defendants' acts of racketeering that target the plaintiff." *Harris v. Orange S.A.*, 636 F. App'x 476, 481 (11th Cir. 2015) (quoting *Beck*, 162 F.3d at 1096 n. 10).

"To assert a civil claim based upon either a violation of the RICO statute or a conspiracy to violate that statute, a plaintiff must show that the defendants violated or conspired to violate the RICO statute; that as a result of this conduct the plaintiff has suffered injury; and that the defendant's violation of or conspiracy to violate the RICO statute was the proximate cause of the injury." *Wylie v. Denton*,

746 S.E.2d 689, 693 (Ga. Ct. App. 2013) (citing *Cox v. Mayan Lagoon Estates*, 734 S.E.2d 883 (Ga. Ct. App. 2012)).

Here, based on the fact that Plaintiffs have stated a claim under O.C.G.A. § 10-5-50, the alleged violation meets the statutory criteria for "racketeering activity." Further, Plaintiffs have indicated at least two violations based on the allegedly false and misleading statements made by Mohawk, Mr. Lorberbaum, or Mr. Boykin, and the alleged scheme liability of Mr. Carson. They have also sufficiently alleged that they were injured by the Defendants' conduct through their losses. The Court further finds that Plaintiffs, at this stage, have sufficiently alleged that their injury was proximately caused by the Defendants' acts of racketeering, which were targeted at Mohawk's investors. As to Mohawk, Mr. Lorberbaum, and Mr. Boykin, the Court finds that Plaintiffs have also sufficiently alleged wire fraud based on the statements made on investor conference calls. With regard to Mr. Carson, however, Plaintiffs have not sufficiently alleged wire fraud. Further, the Court does not find that Plaintiffs have sufficiently alleged mail fraud, theft by taking, or theft by deception against any Defendant because they have provided only conclusory allegations of each.

### 5.  Georgia RICO Conspiracy (O.C.G.A. § 16-14-4(c))

Subsection (c) of O.C.G.A. § 16-14-4 further provides:

> (c) It shall be unlawful for any person to conspire or
> endeavor to violate any of the provisions of subsection

(a) or (b) of this Code section. A person violates this subsection when:

> (1) He or she together with one or more persons conspires to violate any of the provisions of subsection (a) or (b) of this Code section and any one or more of such persons commits any overt act to effect the object of the conspiracy; or

> (2) He or she endeavors to violate any of the provisions of subsection (a) or (b) of this Code section and commits any overt act to effect the object of the endeavor.

With regard to the allegedly false and misleading statements made in Mohawk's SEC filings, the Court finds that Plaintiffs have sufficiently alleged a Georgia RICO conspiracy claim as to Mohawk, Mr. Lorberbaum, and Mr. Boykin based on the GUSA and wire fraud allegations. For the reasons stated in the previous section, the Court does not find sufficient allegations of Georgia RICO conspiracy based on mail fraud, theft by taking, or theft by deception. The Court also does not find, based on the allegations in the Complaint, that Plaintiffs have sufficiently pleaded Georgia RICO conspiracy as to Mr. Carson.

### F. Motion to Consolidate

Defendants move to consolidate this action with the *Hound* and *Fir Tree* actions pursuant to Federal Rule of Civil Procedure 42(a). (Doc. 53). Plaintiffs state that they "do not oppose consolidation for pre-trial purposes only" so long as the Court first resolves Defendants' motions to dismiss and consolidation would be

without prejudice to Plaintiffs' right to file their own summary judgment motions and/or opposition briefs following the close of discovery. (Doc. 54 at 3).

The Court agrees that consolidation for pre-trial purposes is appropriate. As evidenced by this Order, the Court agrees that the motions to dismiss in each action should be decided individually, given the differing statute of limitations questions. The Court further will allow Plaintiffs in each action the opportunity to file individual summary judgment motions and/or opposition briefs, should Plaintiffs determine it necessary.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motions to Dismiss. (Docs. 35, 36, 38).

On Mohawk and Mr. Lorberbaum's Motion to Dismiss (Doc. 36) and Mr. Boykin's Motion to Dismiss (Doc. 35), the Court **GRANTS IN PART** the Motion on Plaintiffs' Section 10(b) and Rule 10b-5 claim as to the specific statement in paragraph 60 of the Complaint only. The Court also **GRANTS IN PART** the Motion as to the Georgia RICO and Georgia RICO conspiracy claims to the extent they are based on mail fraud, theft by taking, or theft by deception. All other portions are **DENIED**.

On Mr. Carson's Motion to Dismiss, the Court **GRANTS IN PART** the Motion as to Plaintiffs' Rule 10b-5(b), Section 18, Section 20(a), fraud, negligent

misrepresentation, and Georgia RICO conspiracy claims. All other portions are **DENIED**.

The Court **GRANTS** Defendants' Motion to Consolidate (Doc. 53) for pre-trial purposes only. This action will be consolidated for the purposes of discovery with the *Hound* Action (No. 4:22-cv-00073-VMC) and the *Fir Tree* Action (No. 4:22-cv-00098-VMC).

**SO ORDERED** this 31st day of March, 2023.

_____
Victoria Marie Calvert
United States District Judge